**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUMNER DAVENPORT, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>DISCOVER FINANCIAL SERVICES and DISCOVER HOME LOANS, INC.,<br><br>        Defendants. | NO. 1:15-cv-06052<br><br>**DEMAND FOR JURY**<br><br>Honorable Virginia M. Kendall<br><br>Magistrate Judge Geraldine S. Brown |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM**

## TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF THE FACTS ......................................................................... 3

    A.    Procedural background ........................................................................... 3

    B.    Discovery ............................................................................................... 4

    C.    The Parties' mediation .......................................................................... 4

    D.    The proposed Settlement........................................................................ 5

        1.    The Settlement Class................................................................... 5

        2.    The Settlement Fund ................................................................... 5

            a.    Notice and claims administration.................................... 5

            b.    Attorneys' fees, costs, and service awards.................... 6

            c.    Payments to Settlement Class Members ....................... 6

            d.    Second payment to Settlement Class Members ........................... 6

            e.    Uncashed checks ........................................................... 6

        3.    Class release................................................................................ 7

        4.    Objections and opt-outs ............................................................. 7

III.    ARGUMENT....................................................................................................... 7

    A.    The settlement approval process............................................................ 7

    B.    The Settlement is within the "range of reasonableness" for preliminary
        Approval ................................................................................................ 9

        1.    The Settlement provides substantial relief for Settlement Class
            Members, particularly in light of the risks................................ 9

            a.    The monetary amount offered in settlement ............... 10

             b.      The strength of Plaintiff's case ..................................................... 11

      2.      Continued litigation is likely to be complex, lengthy, and expense.................................................................................................. 14

      3.      There is currently no opposition to the Settlement ................................ 15

      4.      Plaintiff's counsel strongly endorse the Settlement............................... 15

      5.      The stage of the proceedings and the amount of discovery completed supports preliminary approval................................................ 16

C.      The Settlement resulted from arm's-length negotiations and is not the product of collusion ............................................................................. 16

D.      Provisional certification of the Settlement Class is appropriate ........................ 17

      1.      The Rule 23(a) requirements are satisfied .............................................. 17

      2.      The Rule 23(b)(3) requirements are satisfied ......................................... 18

E.      The proposed notice program is constitutionally sound ...................................... 19

F.      Plaintiff's counsel's requested fees and costs are reasonable ............................ 21

G.      The requested service awards are reasonable ..................................................... 22

IV.      CONCLUSION............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*A.D. v. Credit One Bank, N.A.*,
    No. 14 C 10106, 2016 WL 4417077 (N.D. Ill. Aug. 19, 2016).....................................12

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*,
    No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ...........................................14

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................18, 19

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) .........................................8

*Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.*,
    Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)................8, 16

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ...............................................................................8, 9, 10

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) .......................................................................................18

*Cook v. Niedert*,
    132 F.3d 1004 (7th Cir. 1998) .....................................................................................22

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) .....................................................................................22

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) .........................................................................................2

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009)...........................13, 17, 18

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016)....................................................................................11

*Heekin v. Anthem, Inc.*,
    No. 1:05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012).....................................22

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) .......................................................................... 10

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 11

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................. 15

*In re Southwest Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 WL 4510197 (N.D. Ill., Aug. 26, 2013) ............................. 22

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ............................................................................... 21

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ............................................................................ 7, 9

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ............................................................................ 13

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015).......................................................................... 11

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*,
    834 F. 2d 677 (7th Cir. 1987) .............................................................................. 16

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631 (N.D. Ill. 2002).......................................................................... 17

*McKinnie v. JP Morgan Am. Express Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009)................................................................. 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)...................................................................................... 19, 20

*Parker v. Risk Mgmt. Alternatives, Inc.*,
    206 F.R.D. 211 (N.D. Ill. 2002)...................................................................... 17, 18

*Phillips Randolph Enters., LLC v. Rice Fields*,
    No. 06 C 4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007) ................................. 14

*Romero v. Dep't Stores Nat'l Bank*,
    No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016)............. 12, 13

*Sadowski v. Med1 Online, LLC*,
    No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) ....................................... 19

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................................ 15

*Stoops v. Wells Fargo Bank, N.A.*,
    No. CV 3:15-83, 2016 WL 3566266 (W.D. Pa. June 24, 2016) .................................... 12

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ................................................................................ 1, 9, 10

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
    No. 15-CV-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ...................................... 12

*Will v. Gen. Dynamics Corp.*,
    Civil No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ........................... 22

*Wright v. Nationstar Mtg. LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ..................................... 11

## FEDERAL STATUTES

47 U.S.C. § 227 .................................................................................................................... 1

47 U.S.C. § 227(b)(3) ......................................................................................................... 10

## OTHER AUTHORITIES

5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
    § 13:1 (5th ed. updated December 2016) ......................................................................... 7

*Manual for Complex Litigation* (Fourth) § 21.312 (2004, updated May 2016) .................. 19, 20

*Manual for Complex Litigation* (Fourth) § 21.62 (2004, updated May 2016) ......................... 22

*Manual for Complex Litigation* (Fourth) § 21.63 (2004, updated May 2016) ........................... 8

*Manual for Complex Litigation* (Fourth) § 21.632 (2004, updated May 2016) ........................ 9

## I.    INTRODUCTION

Plaintiff Sumner Davenport ("Plaintiff" or "Ms. Davenport") respectfully moves the Court for preliminary approval of the class action settlement ("Settlement") reached between Plaintiff and Defendants Discover Home Loans, Inc. ("DHL"), and Discover Financial Services (together with DHL, "Discover" or "Defendants" and together with Plaintiff the "Parties"). The proposed Settlement would resolve all claims in the above-entitled action.

Plaintiff alleges that Discover violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by placing telemarketing calls to cellular telephones through the use of an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the recipients of these calls. Plaintiff also alleges that many of these calls were made to numbers registered on the National Do-Not-Call Registry. Ms. Davenport herself received thirteen calls from DHL and was registered on the Do-Not-Call list.

In evaluating the fairness of a proposed class action settlement, the key consideration is the strength of the plaintiff's case on the merits balanced against the amount offered in settlement. *See Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). The Settlement Agreement[1] requires Discover to pay $5,000,000 into a Settlement Fund for a class consisting of approximately 1,831,697 unique telephone numbers purchased by Discover from thirteen "lead generators," as discussed below. Eligible Settlement Class Members who file qualified claims will receive a pro rata cash payment from this Settlement Fund, estimated to be approximately $25–$50 depending on the claims rate.

By contrast, although Plaintiff believed she would prevail at class certification and on the merits, success was not assured. This action involves sharply opposing positions on many

---

[1] The Settlement Agreement is attached to this motion as Exhibit 1.

issues, including four critical ones: First, Discover asserts that it obtained the leads for the calls from thirteen "lead generators," each of whom obtained the consent of the called parties. Second, Discover maintains the calls were not made for telemarketing purposes since they were made in response to the inquiries of consumers. Third, Discover asserts that Ms. Davenport, and members of the class, lack standing under Article III of the Constitution because they have not suffered damages. Fourth, Discover believes that a class cannot be certified because of individual issues surrounding consent, different legal standards during the class period, and due to Ms. Davenport's allegedly different experience with a lead generator. The Court may have agreed with Discover on any of these points. In light of this risk, the relief provided here—cash payments from the Settlement Fund—is fair, reasonable, and adequate.

The Settlement raises none of the "red flags" that the Seventh Circuit has identified as indicative of an unfair settlement. *See Eubank v. Pella Corp.,* 753 F.3d 718, 721 (7th Cir. 2014). The Settlement calls for direct notice to the members of the Settlement Class for whom Defendants have names, addresses, and/or e-mail addresses in their records. The Settlement Fund will be distributed in its entirety, and none of it will revert to Defendants. There is no attorney's fee "free sailing" clause, and Ms. Davenport is an unbiased representative of the proposed Class.

For all these reasons and those that follow, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement, including the settlement payments to the Settlement Class, the requested fee payment to Plaintiff's counsel of $1,466,000, which amounts to approximately 33% of the Settlement Fund net notice expenses, the requested $20,000 payment to Plaintiff's counsel to reimburse them for the out-of-pocket litigation costs they incurred prosecuting and settling this action, and the requested payments of $15,000 to Plaintiff

Davenport and original plaintiff Polly Hansen; (2) provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel the law firms of Burke Law Offices, LLC; Terrell Marshall Law Group PLLC; and The Sultzer Law Group PLLC; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed notice plan, class notices, and claim form; and (6) schedule the final fairness hearing and related dates as proposed by the Parties.[2]

## II.      STATEMENT OF THE FACTS

### A.      Procedural background.

On July 9, 2015, original plaintiff Dr. Polly Hansen filed a lawsuit alleging that she received over thirty autodialed calls to her cell phone from Discover or its agents without her consent.  Unfortunately, Dr. Hansen was unable to continue with the litigation due to serious health issues.  On March 9, 2016, the Court granted Plaintiff's unopposed motion to substitute Davenport as Plaintiff.  On March 16, 2016, Plaintiff filed an Amended Class Action Complaint with Ms. Davenport as the named Plaintiff.  Dkt. No. 55.

On April 6, 2016, Discover filed its Answer and Affirmative Defenses to the Amended Class Action Complaint.  Dkt. No. 59.  Discover admitted that it placed telephone calls to Ms. Davenport.  Dkt. No. 59 ¶¶ 26–31.  However, Discover asserted that it had obtained her consent to receive such calls, as well as consent for members of the class.  Dkt. No. 59 ¶ 20.  Discover also raised a constitutional challenge that TCPA damages violate the due process clause, and a defense that the claims of some Class members were governed by binding arbitration clauses in their contracts with DHL.  Dkt No. 59 at 23–25.

---

[2] The parties have not yet retained a claims administrator.  They will file a joint motion asking the Court to approve a claims administrator at least forty days before the deadline to send notice.

On August 8, 2016, the Parties filed a joint motion to stay the action pending mediation. On October 10, 2016, the Parties engaged in mediation before the Honorable Morton Denlow (Ret.) of JAMS in Chicago and reached a settlement in principle. The Parties then documented the Settlement and engaged in additional discovery concerning the precise composition of the class. Ex. 2 (Declaration of Beth E. Terrell ("Terrell Decl.")) ¶¶ 13–16.

**B.      Discovery.**

Since the filing of the initial Class Action Complaint, Plaintiff has engaged in extensive written discovery. Plaintiff obtained agreements between Discover and its lead generators, documents supporting Discover's assertion of its consent defense, and information about Discover's purchases of leads from lead generators. Terrell Decl. ¶¶ 13–15. Ms. Hansen also responded to written discovery from Discover. *Id.* ¶ 13.

Plaintiff also served subpoenas upon, and received information from, lead generators such as LowerMyBills.com and LendingTree. Terrell Decl. ¶ 14. In addition, after a settlement in principle was reached, Plaintiff continued document discovery and conducted a deposition of a representative of Discover. *Id.*

**C.      The Parties' mediation.**

On October 10, 2016, the Parties participated in an in-person mediation session before the Honorable Morton Denlow (Ret.) of JAMS in Chicago. Terrell Decl. ¶ 16. Prior to the mediation, Plaintiff and Discover submitted detailed mediation briefs to Judge Denlow, setting forth their respective views on the strengths of their cases. *Id.* At mediation, the Parties discussed their relative views of the law and the facts and potential relief for the proposed Settlement Class. *Id.*

Counsel exchanged counterproposals on key aspects of the Settlement. At all times, the settlement negotiations were adversarial, non-collusive, and at arm's length. Terrell Decl. ¶ 16. Although the Parties reached an agreement in principle, it was not until months later and following additional discovery and a deposition of a representative of Discover that the Settlement was finalized. *Id.*

**D.      The proposed Settlement.**

The proposed Settlement establishes a fund of $5 million. The key terms are as follows:

1.      The Settlement Class.

The Settlement Class is defined as follows:

> All persons to whom DHL made, from June 1, 2012 through July 31, 2015, one or more non-emergency telephone calls (a) promoting goods or services through the use of an automatic telephone dialing system or an artificial or prerecorded voice and whose contact information DHL purchased from a third party lead generator, or (b) to a cellular or residential telephone number registered on the national Do Not Call Registry and who received more than one such call within any twelve-month period and whose contact information DHL purchased from a third party lead generator. Excluded from the Settlement Class are all persons who timely and validly request exclusion from the Settlement Class.

Settlement Agreement § II.A.26. Plaintiff has concluded that the Settlement Class is comprised of approximately 1,831,697 people.

2.      The Settlement Fund.

The proposed Settlement establishes a $5,000,000 non-reversionary Settlement Fund. *Id.* § III.G.1. The Settlement Fund will be used to pay the following:

a.      *Notice and claims administration.*

First, if preliminary approval is granted, notice costs will be paid from the fund. Settlement Agreement § III.C.2. The proposed notice plan will consist of direct notice by email and postal mail where such information is available. *Id.* § III.E. The claims administrator will

- 5 -

maintain a website and a toll-free informational hotline. *Id.* If the proposed Settlement receives final approval, the claims administrator will process claims and distribute awards to class members. The parties are in the process of selecting a claims administrator. They will file a joint motion asking the Court to approve the claims administrator forty days before the deadline to send notice (fifty days following entry of an Order preliminarily approving the Settlement).

> b.     *Attorneys' fees, costs, and service awards.*

Second, attorneys' fees, costs, and service awards, if approved by the Court, will be paid from the Fund. *Id*. § III. I-J. Under the Settlement Agreement, Plaintiff's counsel will apply for an award of fees and costs no greater than one-third of the Settlement Fund after notice expenses have been deducted. Discover reserves the right to oppose such a motion. *Id.* § III.I. With respect to the service awards, Discover has agreed not to object provided that Ms. Davenport and Dr. Hansen do not request more than $15,000 each as a service award. *Id.* § III.J.

> c.     *Payments to Settlement Class Members.*

Third, the claims of Settlement Class Members will be paid from the Settlement Fund. The amount of each Settlement Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims. *Id*. § III.F.

> d.     *Second payment to Settlement Class Members.*

Fourth, a second distribution to Settlement Class Members who have submitted claims and cashed their original checks will be made if feasible. *Id*. § III.G.2.

> e.     *Uncashed checks.*

Fifth, any funds remaining from uncashed checks after the second distribution will be distributed to Equal Justice Works, which is a non-profit organization dedicated to access to justice. *Id*. §III.G.3.

No amount of the Settlement Fund will revert to Defendants. *Id.* § III.G.2.

3.    Class release.

In exchange for the benefits allowed under the Settlement, the Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims that "arise out of or are related in any way to the actual or alleged use by DHL, or its agents or affiliates, of an artificial or prerecorded voice, predictive dialer and/or of any automatic telephone dialing system … to place calls to persons whose contact information was purchased from a third party lead generator ... which have accrued on or before through the date of Preliminary Approval."  The Release "expressly extends to claims against third party lead generators from whom DHL purchased leads ... but only as to claims arising from or in any way relating to calls placed by DHL." *Id.* § III.H.

4.    Objections and opt-outs.

If Settlement Class Members wish to object to or opt out of the Settlement, they will have ninety calendar days from the Settlement Notice Deadline to do so. *Id.* §§ III.B.1; III.K.1.

### III.    ARGUMENT

**A.    The settlement approval process.**

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 13:1 (5th ed. updated December 2016) (citing cases).

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." *Am. Int'l Grp., Inc. et al., v. ACE INA Holdings, et al.,* Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

The *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.63 (2004, updated May 2016) describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.* § 21.63. With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (quoting *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir.

- 8 -

1980)).  Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards."  *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

> (1)  the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2)  the likely complexity, length, and expense of continued litigation;
>
> (3)  the amount of opposition to settlement among affected parties;
>
> (4)  the opinion of competent counsel; and
>
> (5)  the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199; *Synfuel Techs.,* 463 F.3d at 653.

Granting preliminary approval of this Settlement will allow all Settlement Class Members to receive notice of the proposed Settlement's terms and the date and time of the final Settlement approval hearing, at which Settlement Class Members may voice approval of or opposition to the Settlement, and at which the Parties and Settlement Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement.  *See* MCL 4th § 21.632.

**B.     The Settlement is within the "range of reasonableness" for preliminary approval.**

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

1.     <u>The Settlement provides substantial relief for Settlement Class Members, particularly in light of the risks.</u>

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered

in the settlement." *Synfuel Techs*, 463 F.3d at 653 (internal quotes and citations omitted).

Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a

settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*

*Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations

omitted).

> a.     *The monetary amount offered in settlement.*

The Settlement requires Defendants to pay $5,000,000 into a Settlement Fund. Out of

this Fund, all eligible Settlement Class Members will receive their *pro rata* share of cash

payments after notice expenses, attorneys' fees and costs. The Settlement Fund is non-

reversionary, ensuring that all or nearly all monetary benefits will go to Settlement Class

Members—none of the Settlement Fund will return to Defendants.

Although the precise amount of each Settlement Class Member's award cannot be

determined until all claims have been submitted, Plaintiff's counsel estimate, based on their

experience in similar TCPA class actions, that claimants will receive awards in the range of $25

to $50 after deductions for court-approved attorneys' fees and costs, court-approved service

awards to the Plaintiff, and costs of notice and claims administration. Terrell Decl. ¶ 18.

Plaintiff's counsel acknowledge that the $5,000,000 Fund does not constitute the full

measure of statutory damages potentially available to the Settlement Class members, who

theoretically could recover $500, or up to $1,500, in statutory damages for each violation of the

TCPA if they were to prevail in litigation. *See* 47 U.S.C. § 227(b)(3)(B) (permitting $500 in

statutory damages for each violation of the TCPA); 47 U.S.C. § 227(b)(3)(C) (permitting $1,500

for "willful" TCPA violations). But class action settlements, like settlements in any litigation,

are bargained exchanges between the parties. *Armstrong*, 616 F.2d at 315. As such, obtaining a

Settlement Fund with less than the full measure of statutory damages should not weigh against preliminary approval.  The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after extensive arm's-length negotiations presided over by an experienced mediator and former judge.  Further, the Settlement compares favorably to other TCPA class action settlements approved in this District.  *See Wright v. Nationstar Mtg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *8–9 (N.D. Ill. Aug. 29, 2016) (approving TCPA settlement where each claimant receive $45) (Chang, J.); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving settlement where recovery per claimant was $52.50) (Feinerman, J.); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66) (Holderman, J.); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30) (Kennelly, J.).

The Settlement provides Settlement Class Members with real monetary relief, despite the fact that this is a purely statutory damages case in which class members incurred nominal economic damages or whose actual damages (such as to the invasion of their privacy) are difficult or impossible to quantify.  For all of the above reasons, the monetary amount recovered through the Settlement—on par with TCPA settlements found to be fair, adequate, and reasonable—is a great result for the Class.

> b.  *The strength of Plaintiff's case.*

Plaintiff continues to believe that her claims against Defendants have merit and that she would make a compelling case if her claims were tried.  Nevertheless, Plaintiff and the Class would face a number of difficult challenges if the litigation were to continue.  Discover bought the call information it used from lead generators, such as Lending Tree and LowerMyBills.com.

These lead generators solicit information from potential customers online and sell the leads. Discover maintains that many, if not all, of the Settlement Class members consented to the calls at issue because the lead generators' websites require visitors to agree to be contacted through an automated telephone system even if they are on a corporate, state, or National Do Not Call Registry. Discover also argues that since consumers expressly request to be called, the calls do not constitute "telemarketing" as defined in the TCPA.

Plaintiff believes disclosures of this type are inadequate to establish consent because, among other issues, they do not identify the entity that will be calling the consumer. Plaintiff also believes the calls, which are attempting to sell mortgage refinancing, are exactly the type of call covered by the TCPA. However, it is possible that the Court or a finder of fact would disagree.

Discover also maintains that Ms. Davenport and some class members lack Article III standing. *See Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-CV-5182, 2016 WL 4179150, at *15 (N.D. Ill. Aug. 8, 2016) (dismissing TCPA action because plaintiff failed the "zone of interests" analysis where plaintiff actively sought robo-calls and concluding calls were not "unwanted"); *Stoops v. Wells Fargo Bank, N.A.*, No. CV 3:15-83, 2016 WL 3566266, at *13-16 (W.D. Pa. June 24, 2016) (same). Plaintiff is confident that she would defeat this argument. *See, e.g., A.D. v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 4417077, at *7 (N.D. Ill. Aug. 19, 2016) (Kennelly, J.) (violation of TCPA constitutes concrete injury and confers standing). Nonetheless, some of the jurisprudence stemming from the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) might support Discover's position at least with some class members. *See, e.g. Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL

4184099, at *6 (S.D. Cal. Aug. 5, 2016) (dismissing TCPA claims due to lack of injury in fact).

Accordingly, there is a risk of the class being narrowed or the claims being eliminated entirely.

The Parties also disagree about whether a class can be certified because of what Discover maintains are inherently individual issues among class members. This Court has observed that "[t]here is a split of opinion in TCPA cases on whether issues of individualized consent predominate over common questions of law or fact so as to prevent class certification." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013). The rule is that issues of individualized consent predominate "when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone." *Id.* at 106–107 (declining to certify class where defendant presented evidence that some proposed class members had consented to calls and where figuring out whether a person had provided consent would require a "labor intensive review" of notes fields in the defendant's computer system). By contrast if the defendant fails to submit such evidence, class certification may be appropriate. *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.) (The defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists have perchance consented to receiving the fax."). Plaintiff believes that Discover will be unable to satisfy its evidentiary burden at class certification. However, if Discover were able to present convincing facts to support its assertion that a significant number of proposed class members consented to calls, there is a risk that the Court would decline to certify the Settlement Class, leaving only the named Plaintiff to pursue her individual claims.

At least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds.

- 13 -

*See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at

*4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages

award for willful FACTA violations in this case — between $100 and $1,000 per violation —

would not violate Defendant's due process rights . . . . Such an award, although authorized by

statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips

Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11,

2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th

Amendment does not impose upon Congress an obligation to make illegal behavior affordable,

particularly for multiple violations.").

Finally, there remains a risk of losing a jury trial. And, even if Plaintiff did prevail at

trial, any judgment could be reversed on appeal.

Despite these disagreements, the Parties reached the Settlement after participating in

mediation before the Honorable Morton Denlow (Ret.) of JAMS. The Settlement provides

substantial relief to the Settlement Class Members without delay and is within the range of

reasonableness, particularly in light of the above risks that Settlement Class Members would face

in litigation.

2.     Continued litigation is likely to be complex, lengthy, and expensive.

Litigation would be lengthy and expensive if this action were to proceed. Although the

Parties engaged in significant discovery efforts, continued litigation would involve extensive

motions practice, including Plaintiff's motion for class certification and motions to compel

arbitration and summary judgment. Any judgment in favor of Settlement Class Members could

be further delayed by the appeal process. Instead of facing the uncertainty of a potential award

in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to

receive immediate and certain relief.  *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

        3.        <u>There is currently no opposition to the Settlement.</u>

All Parties favor settlement.  But because notice has not yet been sent to the Settlement Class, this factor cannot be fully evaluated prior to the final fairness hearing.

        4.        <u>Plaintiff's counsel strongly endorse the Settlement.</u>

Plaintiff's counsel strongly endorse this Settlement.  Terrell Decl. ¶ 17; Ex. 3 (Declaration of Alexander H. Burke) ¶ 12; Ex. 4 (Declaration of Adam Gonnelli) ¶ 4.  Plaintiff's counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Plaintiff's counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases) (*see id.*); (2) Plaintiff's counsel engaged in formal and informal discovery and carefully evaluated the claims in the context of settlement negotiations (Terrell Decl. ¶¶ 13–15); and (3) the Settlement was reached at arm's-length through negotiations between experienced counsel, after a mediation session before an experienced mediator and former judge (*see id.* ¶ 16).  *See McKinnie v. JP Morgan Am. Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  Therefore, this factor weighs in favor of preliminary approval.

5.     <u>The stage of the proceedings and the amount of discovery completed supports preliminary approval.</u>

The Settlement was reached after almost one and a half years of litigation. The Parties had commenced formal discovery and had engaged in significant informal discovery. Terrell Decl. ¶¶ 13–16. Plaintiff sought and obtained document discovery from Discover concerning its telemarketing efforts, purchase of leads from lead generators, and support for its consent defense. *Id.* Plaintiff also obtained discovery from lead generators concerning their efforts to obtain consent. *Id.*

At the time of the Settlement, Plaintiff's counsel had the information necessary to confirm that the Settlement is fair, reasonable, and adequate. Terrell Decl. ¶ 19. However, extensive motion work, including Plaintiff's motion for class certification, remains. *Id.* The Parties also likely will need to retain experts to analyze Discover's call data. *Id.* Realistically, it could be at least a year before the case would proceed to trial. *Id.* The appeals process may further delay any judgment in favor of Settlement Class Members. *Id.* The Settlement avoids these risks and provides immediate and certain relief.

**C.     The Settlement resulted from arm's-length negotiations and is not the product of collusion.**

The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *Am. Int'l Grp.,* 2012 WL 651727, at *2.

The Parties reached the Settlement after a day-long mediation with Judge Denlow (Ret.), additional extensive document exchanges, a subsequent deposition, and follow-up arm's-length

- 16 -

negotiation between attorneys experienced in the litigation. Terrell Decl. ¶¶ 13–16. Counsel for both Parties are experienced in litigating TCPA claims, understand the legal and factual issues involved in litigating TCPA cases generally, and through targeted, efficient discovery were well-versed in the specific factual nuances of this case in particular. As a result, Plaintiff's counsel were well-positioned to evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to settle it.

**D.      Provisional certification of the Settlement Class is appropriate.**

For settlement purposes, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class defined in the Settlement Agreement so that the settlement administrator can send notice of the Settlement to the Settlement Class. Settlement Agreement § II.A.26. Defendants have agreed to provisional certification of the Settlement Class, as defined in the Settlement Agreement, solely for purposes of this Settlement. Defendants contend, however, that no litigation class could be certified in this case.

1.      The Rule 23(a) requirements are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 1,831,697 people throughout the United States and joinder of all such persons is impracticable. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity).

The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on calls made by or on behalf of Discover to the Settlement Class Members on their cell phones. *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc.*, 2009 WL 2581324, at *12 (finding the

following common questions: "1) whether Defendants violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages.").

The typicality requirement is satisfied because Plaintiff's TCPA claims, which are based on home mortgage telemarketing calls made by or on behalf of Discover to her cell phone, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213.

The adequacy of representation requirement is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign*, 2009 WL 2581324, at *15-16. Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See* Terrell Decl. ¶¶ 1–12; *see generally* Burke Decl.; Gonnelli Decl.

2.      The Rule 23(b)(3) requirements are satisfied.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, (1997)). Predominance is satisfied so long as individual issues do not "overwhelm" common issues. *Id.* (quoting *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, ——— U.S. ———, 133 S.Ct. 1184, 1196 (2013)). Common issues predominate here because the central liability question in this case — whether Discover placed autodialed calls to consumers' telephones without their consent — can be established through generalized evidence. *See*

*Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *4 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database" and whether the act of sending unsolicited faxes "violated the TCPA" predominated over individualized defenses and damages issues).

With respect to superiority, since the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.") And, resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits, promoting consistency and efficiency of adjudication. *See Sadowski*, 2008 WL 2224892, at *5 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'") For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

**E.     The proposed notice program is constitutionally sound.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950). According to the *Manual for Complex Litigation*, *supra*, at § 21.312, the

settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits B and C to the Settlement

Agreement, satisfy all of the criteria above. The Notice Plan provides for direct, individual

notice via either email or postal mail. Settlement Agreement § III.E.1. In addition, the Claims

Administrator will utilize a reverse-phone look up process to identify Settlement Class email

and/or mailing addresses, as well as a National Change of Address Update to locate the most

recent addresses.

In addition, notice will be published through a one-time publication in a print publication

with national circulations. Finally, notice will also be provided to Settlement Class Members

online through the Settlement Website. Settlement Agreement § III.E.2. Plaintiff will file a

motion seeking approval of a claims administrator at least forty days before the deadline to send notice.

**F.      Plaintiff's counsel's requested fees and costs are reasonable.**

Plaintiff's counsel will seek an award not to exceed $1,466,000 to compensate them for reasonable fees and costs associated with this action.  Plaintiff's fee request amounts to 33.33% of the Settlement Fund after deducting notice expenses.  Plaintiff's counsel also seek reimbursement for the approximately $20,000 in out-of-pocket costs they incurred prosecuting and settling this litigation.

Plaintiff's counsel's requested fee is reasonable.  In the Seventh Circuit, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citing cases).  Plaintiff's counsel have achieved an excellent result for the Settlement Class in the face of substantial risk.  The Settlement creates a non-reversionary Settlement Fund of $5,000,000.  The majority of the Settlement Fund will be distributed as monetary awards to Settlement Class Members.  Because Plaintiff's counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, they faced substantial risk if they proceeded to trial.

Thirty days before the deadline to opt out or object to the Settlement Plaintiff's counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.  Discover has reserved the right to oppose Plaintiff counsel's request for fees.

**G.      The requested service awards are reasonable.**

The Service Awards for class representatives like those requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 132 F.3d 1004 (7th Cir. 1998) (approving incentive award of $25,000 to named plaintiff); *see also* MCL 4th § 21.62, n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Such awards are generally proportional to the representatives' losses or claims, and can range from several hundred dollars to many thousands of dollars.

Here, Plaintiff and Dr. Hansen request Service Awards of $15,000 each. Plaintiff and Dr. Hansen worked with Plaintiff's counsel to investigate the case, were kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. The amount requested here is in line with awards approved by federal courts in Illinois. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 service award to plaintiff); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, *11 (N.D. Ill., Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Heekin v. Anthem, Inc.*, No. 1:05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs).

## IV.      <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court do the following: (1) preliminarily approve the proposed Settlement as being within the range of

- 22 -

possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiff as class representative; (3) appoint her attorneys Terrell Marshall Law Group PLLC, Burke Law Offices, LLC, and The Sultzer Law Group as Class Counsel; (4) approve the proposed Notice and Claims Program; (5) set a deadline for the parties to file a joint motion to approve the claims administrator; (6) direct that Notice be provided to the Settlement Class pursuant to the terms of the Settlement Agreement within ninety following entry of the preliminary approval order; (7) establish a procedure for Settlement Class members to object to the Settlement or exclude themselves from the Class; (8) set a deadline ninety days after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the Settlement Class, or seek to submit a Claim; (9) pending final determination of whether the Settlement should be approved, stay all proceedings except those related to effectuating the Settlement; and (10) schedule a hearing to consider final approval of the Settlement, which shall be scheduled no earlier than forty-five days after the opt-out and objection deadline.

Dated: January 13, 2017

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
     Beth E. Terrell, *Admitted Pro Hac Vice*
     Email:  bterrell@terrellmarshall.com
     Jennifer Rust Murray, *Admitted Pro Hac Vice*
     Email:  jmurray@terrellmarshall.com
     Mary B. Reiten, *Admitted Pro Hac Vice*
     Email:  mreiten@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington  98103-8869
     Telephone:  (206) 816-6603
     Facsimile:  (206) 319-5450

Alexander H. Burke
Email:  aburke@burkelawllc.com
Daniel J. Marovitch
Email:  dmarovitch@burkelawllc.com
BURKE LAW OFFICE, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Adam R. Gonnelli, *Admitted Pro Hac Vice*
Email:  gonnellia@thesultzerlawgroup.com
THE SULTZER LAW GROUP PC
280 Highway 35, Suite 304
Red Bank, New Jersey 07701
Telephone:  (732) 741-4290
Facsimile:  (888) 749-7747

Innessa S. Melamed, *Admitted Pro Hac Vice*
Email:  imelamed@faruqilaw.com
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331

*Attorneys for Plaintiff and the Proposed Classes*

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on January 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Julia B. Strickland
Email: jstrickland@stroock.com
Arjun P. Rao, *Admitted Pro Hac Vice*
Email: arao@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Mark B. Blocker
Email: mblocker@sidley.com
J. Simone Jones
Email: simone.jones@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

DATED this 13th day of January, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff*

- 25 -