IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUMNER DAVENPORT, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>DISCOVER FINANCIAL SERVICES and DISCOVER HOME LOANS, INC.,<br><br>                Defendants. | NO. 1:15-cv-06052<br><br>**DEMAND FOR JURY**<br><br>Honorable Virginia M. Kendall<br><br>Magistrate Judge Geraldine S. Brown |

## **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND SERVICE AWARDS**

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................. 2

    A.    Class Counsel have obtained an excellent result for the Settlement Class ........... 2

    B.    The action involved considerable risk ................................................. 3

    C.    Class Counsel thoroughly and efficiently investigated the class claims ............... 4

III.   THE SEVENTH CIRCUIT STANDARD FOR COMMON FUND
       SETTLEMENTS ............................................................................ 5

IV.   ARGUMENT .................................................................................. 6

    A.    The court should use the percentage-of-the-fund approach to calculate fees ....... 6

          1.    The requested fee is presumptively reasonable ....................................... 7

          2.    The requested fee reflects the market rate for legal services in a
              TCPA case ................................................................................ 8

              a.    Class counsel's fee request is consistent with their
                   contingency fee agreement with Plaintiff .................................... 8

              b.    Class Counsel's fee request is consistent with fees
                   awarded in similar TCPA class actions ........................................ 9

              c.    An award of thirty-three percent of the fund approximates
                   the market rate for attorneys' fees in light of the risk in
                   this case ................................................................................ 11

          3.    Other factors the Seventh Circuit has identified as relevant to the
              market rate support Class Counsel's fee request .................................... 13

              a.    Class counsel's risk of nonpayment supports the requested
                   fee ........................................................................................ 13

              b.    Class Counsel's performance supports the requested fee ........... 14

               c.    The stakes of the case support the requested fee ........................ 15

B.      The service award to the Class Representative should be approved .................. 15

V.      CONCLUSION........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
   743 F.3d 243 (7th Cir. 2014) ............................................ 5

*Aranda v. Caribbean Cruise Line, Inc.*,
   No. 12 C 4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017).......................................... 6

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014)..................................................... 12

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................... 5

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ..................................................... 15, 16

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
   No. 11-cv04462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015)........................... 6, 10, 16

*Estrada v. iYogi, Inc.*,
   No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)................... 15

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ..................................................... 6, 13

*Franklin v. Wells Fargo Bank, N.A.*,
   Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) .......... 14

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ..................................................... 7, 9

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016)..................................................... 14

*Heekin v. Anthem, Inc.*,
   05-cv-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)...................... 16

*Ikuseghan v. Multicare Health Sys.*,
   No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) .................. 10, 11

*In re Capital One, Tel. Consumer Prot. Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................6, 8-11, 14

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ........................................................................... 7

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
    280 F.R.D. 364 (N.D. Ill. 2011)...................................................................... 5

*In re Ready-Mixed Concrete Antitrust Litig.*,
    No. 1:05-CV-00979-SEB, 2010 WL 3282591 (S.D. Ind. Aug. 17, 2010) ...................... 6

*In re Sw. Airlines Voucher Litig.*,
    No. 110CV-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013).................................. 16

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ................................................................5, 9, 15

*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) ........................................................................ 9, 10

*Jamison v. First Credit Servs.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ...................................................................... 12

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ......................................................................... 9

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015).............................................................6, 8-11, 13, 14

*Manouchehri v. Styles for Less, Inc.*,
    Case No. 14cv2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016)...................... 14

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................................... 7

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ......................................................................... 7

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
    Case No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)................................. 9

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*,
    No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ........................................... 12

*Silverman v. Motorola Solutions, Inc.*,
 739 F.3d 956 (7th Cir. 2013) ....................................................................... 8, 13

*Sutton v. Bernard*,
 504 F.3d 688 (7th Cir. 2007) ................................................................ 5, 13, 14

*Taubenfeld v. AON Corp.*,
 415 F.3d 597 (7th Cir. 2005) ......................................................................... 8, 9

*Wilkins v. HSBC*,
 No. 14 D 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)............................ 10

*Wright v. Nationstar Mortg. LLC*,
 No. 14 C 1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016)............................ 6, 10, 14

## FEDERAL RULES

47 C.F.R. § 64.1200(f)(8)(i)................................................................................... 12

# I. INTRODUCTION

The Court has preliminarily approved a proposed class action settlement ("Settlement") between Plaintiff Sumner Davenport, individually and behalf of all others similarly situated, and Defendants Discover Financial Services and Discover Home Loans, Inc. ("Discover"). The Settlement is an excellent result for the Settlement Class; it requires Discover to pay $5,000,000 into a common fund for the benefit of the approximately 1,831,697 Settlement Class members. Settlement Class members have until July 24, 2017 to submit their claim forms, object, or opt out of the Class. As of today, the Settlement Administrator has received claims from 49,043 Settlement Class members. Only 54 Class members have opted out of the Settlement, and none have objected to it. If the claims period closed today, each claimant would receive over $60.

The Settlement is the result of the efforts of experienced and knowledgeable Class Counsel; efforts taken at great financial risk. To compensate them for their efforts, Class Counsel seek $1,458,600, which equals 33% of the net common fund after settlement administration expenses and service awards to the named Plaintiffs are deducted. The requested fee reflects the market price for contingent legal fees in complex litigation: it is consistent with attorneys' fees awarded in this District in TCPA litigation, it reflects the risks presented by this case, the quality of the work performed by Class Counsel, and the result achieved.

Class Counsel also respectfully request that the Court grant service awards of $15,000 each to named Plaintiff Sumner Davenport and former named Plaintiff Polly Hansen. The requested attorneys' fees and service awards are reasonable and in line with the Seventh Circuit's requirements for approval. For these reasons, Class Counsel's motion should be granted.

## II.  STATEMENT OF FACTS

**A.      Class Counsel have obtained an excellent result for the Settlement Class.**

The Settlement Agreement provides that Discover will pay $5,000,000 into a Settlement Fund from which all Settlement Class members will have the opportunity to make a claim. Dkt. No. 78-1 ("Settlement Agreement") § III(C)(1). The amount of each Settlement Class member's cash payment will be based on a pro rata distribution and will depend on the number of valid and timely claims. *Id.* § III(F)(1). In their motion for preliminary approval, Class Counsel estimated awards in the range of $25 and $50 after deductions for the requested attorneys' fees, the requested service awards to the named Plaintiffs, and notice and claims administration costs. Dkt. No. 78 at 1.

Settlement Class members must submit a claim form. Settlement Agreement §§ III(F)(1)-(2). Class members can submit claims through the mail or electronically. *Id.* § III(F)(2). Regardless of the method by which they submit their claims, Settlement Class members need only complete and sign the single-page claim form approved by the Court in order to submit a claim. *Id.*, Ex. A. Class members have until July 24, 2017 to submit their claim forms, object to the Settlement or opt out of the Class. *See* Dkt. No. 82 at 10. As of today, the Settlement Administrator had received 49,043 claims, which amounts to 2.76% of the Settlement Class. Declaration of Beth E. Terrell ("Terrell Decl.") ¶ 2. Based on the current number of claims submitted and the remaining time for submission of claims, the Settlement Administrator estimates that the cost of notice and claims administration will be, at most, $550,000. *Id.*

If any amounts remain in the Settlement Fund as a result of uncashed checks, those funds will be redistributed on a pro rata basis to Settlement Class members who cashed their first check, if it is administratively feasible to do so. Settlement Agreement § III(G)(2). Any residual funds remaining after the second distribution—or after the first distribution if a second is not

administratively feasible—will be distributed to a non-profit charitable organization. *Id.* § III(G)(3). The parties have proposed c*y pres* distribution to Equal Justice Works. *Id.* Not one penny of the Fund will revert to Discover. Thus, the Settlement achieved by Class Counsel provides real monetary relief to the Settlement Class.

**B.      The action involved considerable risk.**

In 2015, Class Counsel undertook representation of this matter on a pure contingency-fee basis. Terrell Decl. ¶ 17. As a result, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment, all while devoting time to this case that otherwise could have been spent on other matters. *Id.*

The primary risk Plaintiff faced was that she could lose on the merits. Terrell Decl. ¶ 18. Discover maintains that Class members are not entitled to recover because they consented to be contacted on their cell phones by providing their phone number through a lead generator's website, along with an authorization to be contacted at the number provided using an automated dialer. *Id.* Plaintiff disagrees that the language on the website is sufficient for consent under the TCPA. *Id.* ¶ 26. However, if the trier of fact disagreed with Plaintiff on this legal issue, Plaintiff and the Class would receive nothing.

Plaintiff also maintains Discover's consent defense is meritless because, at least some cases, the purported consent forms submitted electronically to Discover's lead generators appear to have been fraudulent or inaccurate. Terrell Decl. ¶ 18. For example, one of Discover's lead generators sold Ms. Davenport's telephone number to Discover as a consent lead, but the name and address associated with the lead are not Ms. Davenport's name and address. *Id.* It appears that another person submitted Ms. Davenport's cell phone number through the lead generator's website. *Id.* Similarly, a different lead generator sold Ms. Hansen's telephone number to Discover as a consent lead. *Id.* Ms. Hansen alleges that she did not submit her telephone number

to the lead generator. *Id.* At trial, the jury would have to resolve this disputed issue of fact. *Id.* If the jury found Discover's witnesses and documentary evidence more credible, Plaintiff may have lost on the merits.

Plaintiff risked never even reaching the merits phase of the litigation because this Court may have found that determining the accuracy of the lead generators' lead data and resolving credibility issues were sufficiently individualized to defeat class certification. Terrell Decl. ¶ 19.

**C.     Class Counsel thoroughly and efficiently investigated the class claims.**

The parties litigated this action for over a year before mediation. Terrell Decl. ¶ 20. Plaintiff propounded written discovery requests targeting Discover's policies and practices, and the calling data necessary to identify the class and establish the scope of the violations. *Id.* Plaintiff also pursued third-party discovery from the lead generators who purportedly obtained consent for Discover to call Ms. Davenport and Ms. Hansen. *Id.*

The parties agreed to stay formal discovery pending mediation. Terrell Decl. ¶ 21. Discover agreed to provide certain documents and information in advance of mediation, including redacted agreements between Discover and lead generators, screenshots of purported "consent" language on lead generator websites, and summary information regarding the number of leads each lead generator sold to Discover. *Id.*

By the time the parties commenced settlement negotiations, they understood the strength and weaknesses of their claims and defenses. Terrell Decl. ¶ 22. The parties mediated with the Honorable Morton Denlow (Retired) of JAMS on October 10, 2016. *Id.* During that full-day mediation session, the parties executed a term sheet and subsequently finalized the Settlement Agreement. *Id.*

The Settlement Agreement was conditioned upon Discover providing additional discovery regarding the scope and composition of the Settlement Class. Terrell Decl. ¶ 23.

Following mediation, Discover responded to additional interrogatories and produced a Fed. R.

Civ. P. 30(b)(6) witness to testify. *Id.* Class Counsel deposed Discover's witness on November

15, 2016. *Id.*

## III. THE SEVENTH CIRCUIT STANDARD FOR COMMON FUND SETTLEMENTS

The Seventh Circuit and other federal courts have long recognized that when counsel's

efforts result in the creation of a common fund that benefits plaintiffs and unnamed class

members, counsel have a right to be compensated from that fund for their successful efforts in

creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a

common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v.

Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for

compensation from the settlement or common fund created for the class's benefit"). The goal is

to award counsel "the market price for legal services, in light of the risk of nonpayment and the

normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d

712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

In common fund cases, unlike fee-shifting cases, courts have discretion to use one of two

methods to determine whether counsel's request reflects the market rate for legal services: (1)

percentage of the fund; or (2) lodestar plus a risk multiplier. *See, e.g., Americana Art China, Co.

v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the

approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the

benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices

Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

## IV.  ARGUMENT

**A.     The court should use the percentage-of-the-fund approach to calculate fees.**

Courts in this district have routinely concluded that the percentage-of-the-fund approach is superior to the lodestar approach for determining the market price for legal services in TCPA class action settlements. *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14 C 1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv04462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (same). The percentage-of-the-fund approach is particularly appropriate in consumer class actions because the custom is for counsel and plaintiff to "negotiate[] a fee arrangement based on a percentage of the recovery.*" In re Capital One, Tel. Consumer Prot. Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) ("*Capital One*") (applying percentage-of-the-fund method in TCPA class action). "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis," which is something that consumer class members "likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (using percentage-of-the-fund method in TCPA class action).

The Seventh Circuit has found that "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *see also In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-CV-00979-SEB, 2010 WL 3282591, at *2 (S.D. Ind. Aug. 17, 2010) ("the 'percentage of the fund' approach to determining reasonable attorneys' fees is favored by the Seventh Circuit is also the most accurate reflection in this case of the market price for legal

services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time"); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

Class Counsel and Plaintiff have created a $5,000,000 non-reversionary settlement fund that provides real value to Settlement Class Members. If the claims period closed today (and assuming all claims are valid), each claimant would receive approximately $60. This amount will decrease as claims come in during the final month of the claims period. Terrell Decl. ¶ 24. However, the amount each claimant will receive will likely exceed, or be on the higher end of, the range of $20–$50 estimated in Plaintiff's motion for preliminary approval of the settlement. Dkt. No. 78 at 1. The preferred and more administratively feasible percentage of the fund method should be used to calculate Class counsel's fee for their work to attain that excellent result for the Settlement Class.

1.    The requested fee is presumptively reasonable.

"The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572. Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)). Although there is no hard-and-fast rule, in consumer class actions in the Seventh Circuit, attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631.

Here, Class Counsel seek fees equal to thirty-three percent of the net of the $5,000,000 Settlement Fund or $1,458,000. If Class Counsel's requested fees are approved, the Settlement Class Members would receive $2,961,400 ($5,000,000 settlement fund - $1,458,600 attorneys' fees - $30,000 class representative award - $550,000 costs of administration). Thus, the "fee plus what the class members would receive" totals $4,426,000 ($2,961,400 + $1,458,600). Based on the ratio set forth in *Pearson* and *Redman*—fees to fees plus the value to class members—Class Counsel's request for fees constitutes 33% of the total settlement value, which is within the acceptable range of fee awards in the Seventh Circuit. Therefore, the requested fee is presumptively reasonable under *Pearson* and *Redman*.

2.   The requested fee reflects the market rate for legal services in a TCPA case.

A fee award should "approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (citations omitted). To determine the market rate, courts consider "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). However, in TCPA cases, data from fees determined before litigation commences or pursuant to a court-supervised "auction" is virtually non-existent. *Capital One*, 80 F. Supp. 3d at 796–97. Thus, district courts generally consider whether the requested fee is consistent with fees awarded at the end of similar class actions and with plaintiff and counsel's retainer agreement. *See Kolinek*, 311 F.R.D. at 493–94 (citing *Taubenfeld*, 415 F.3d at 600).

a.   *Class counsel's fee request is consistent with their contingency fee agreement with Plaintiff.*

The first factor courts consider when determining the market rate for fees is whether the plaintiff has an actual agreement with class counsel regarding payment of attorneys' fees.

*Capital One*, 80 F. Supp. 3d at 796 (citing *Synthroid I*, 264 F.3d at 719). In this Circuit, it is customary for counsel to negotiate *ex ante* a contingency agreement in the range of 30–40%. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Class Counsel's retainer agreement with Plaintiff provides for a contingency fee of 33% of the net amount recovered, which is well in-line with Seventh Circuit custom. *See* Terrell Decl. ¶ 25. Class Counsel seek 33% of the net award, which is the amount they negotiated with Plaintiff *ex ante*. This factor favors approving Class Counsel's fee request.

        b.    *Class Counsel's fee request is consistent with fees awarded in similar TCPA class actions.*

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek*, 311 F.R.D. at 493–94 (citing *Taubenfeld*, 415 F.3d at 600). In 2015, the Honorable James F. Holderman (ret.) performed an extensive analysis using data compiled from seventy-two post-2010 TCPA class action settlements to determine the appropriate market rate for attorney fee awards in common-fund TCPA settlements. *Capital One*, 80 F. Supp. 3d at 798–804. Judge Holderman concluded that the market rate in a typical TCPA class action is a sliding-scale fee that is calculated based on a percentage of the common fund recovery achieved for the benefit of the settlement class. *Id.* at 804, n. 16; *see also In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th

Cir. 2003) ("*Synthroid II*") (awarding class counsel 30% of the first $10 million of recovery in a common fund case and a decreasing percentage of the fund above $10 million because the market rate percentage of recovery "likely falls as the stakes increase"). After scrutinizing data from the seventy-two TCPA cases, Judge Holderman determined that the market rate (or sliding scale) for the award of fees in TCPA class actions, prior to accounting for the risks associated with a particular case, is as follows:

| RECOVERY | BASELINE FEE PERCENTAGE (BEFORE ADJUSTMENT FOR RISK) |
|---|---|
| First $10 million | 30% |
| Next $10 million | 25% |
| $20–45 million | 20% |
| Excess above $45 million | 15% |

*Capital One*, 80 F. Supp. 3d at 804, n. 13 (citing *Synthroid II*, 325 F.3d at 979).

Judge Holderman's sliding scale has since been adopted by other courts in TCPA cases in this Circuit and elsewhere. *See, e.g., Ashack v. Caliber Home Loans, Inc.*, No 1:15-cv-1069-JMS-DML (S.D. Ind., June 16, 2017) (citing *Capital One* and awarding class counsel a fee equaling 30.39 percent of the net settlement fund in TCPA case); *Wright*, 2016 WL 4505169, at *14 (agreeing that the "baseline rate in TCPA cases is 30% of the first $10 million of recovery"); *Kolinek*, 311 F.R.D. at 501–02 (awarding attorneys' fees equal to 36% of the settlement fund less administrative costs and the service award and noting that Judge Holderman's analysis had its origins in Seventh Circuit precedent); *Craftwood Lumber Co.*, 2015 WL 2147679, at *4 (adopting Judge Holderman's sliding scale); *Wilkins v. HSBC*, No. 14 D 190, 2015 WL 890566, at *11 (N.D. Ill. Feb. 27, 2015) (adopting sliding scale and awarding class counsel 30% of the first $10 million of a TCPA settlement fund); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539

BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding class counsel $750,000 in fees plus $26,986.90 in costs from a settlement fund totaling $2,500,000 and favorably citing and discussing *Capital One*).

Judge Holderman's extensive analysis of similar TCPA settlement shows that Class Counsel's request for 33% is in line with settlements in similar cases. Class Counsel seeks an award reflecting baseline rate of 30% of the net Settlement Fund plus a three percentage point risk adjustment. *See Kolinek*, 311 F.R.D at 502–03 (using the method adopted in *Capital One* and awarding 36% of the fund—a 30% baseline rate plus a 6 percentage point adjustment for risk).

> c. *An award of thirty-three percent of the fund approximates the market rate for attorneys' fees in light of the risk in this case.*

Courts in this district have recognized that the risks associated with a defendant's consent defense may warrant an increase in the percentage used to calculate Class counsel's fee. Judge Holderman awarded class counsel in *Capital One* a "risk premium" based, in part, on the risk that consent issues posed to class recovery. *See In re Capital One*, 80 F. Supp. 3d at 805 (noting risks posed by fact that "[s]ome customers provided Capital One with their cell phone numbers as their primary contact numbers, arguably waiving any right not to receive debt-collection calls on their cell phone from Capital One").

The risk of further protracted litigation—and ultimately of no recovery at all—was serious in this case, given Discover's consent defense. Discover obtained telemarketing leads generated through websites dedicated to home loan financing. Terrell Decl. ¶ 26. These websites entice consumers to submit their names, telephone numbers, and other contact information in order to obtain a "free" mortgage quote or offer. The websites also require consumers to accept language purporting to authorize lenders like Discover to call them using an autodialer. *Id.*

Plaintiff maintains that the purported consent obtained by Discover's lead generators was inadequate because it failed to conspicuously identify Discover as a "seller" the consumer was consenting to receive calls from and failed to conspicuously state that the consumer was consenting to sales calls, as opposed to informational calls. *See* 47 C.F.R. § 64.1200(f)(8)(i). Whether Plaintiff or Discover would have prevailed on these issues is an unresolved question of law.

Second, Plaintiff would have faced hurdles at class certification. In a prior TCPA case, this Court ruled that consent issues predominated over common questions. *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominated in TCPA action where defendant came forward with some evidence of consent). Other courts have reached different results depending on the circumstances of the case. *See, e.g., Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC,* No. 12 C 3671, 2012 WL 6106714, at *6 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding that no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same). Nevertheless, the risk that the Court would have found that the consent issues identified by Discover predominated over common issues was significant. Individualized issues may have arisen related who in fact submitted a particular telephone numbers to Discover's lead generators. Discover's lead generators had records reflecting that both Ms. Hansen's number and Ms. Davenport's number had been submitted to the lead generator, but neither woman had provided her number to the lead generator.

Third, even if Plaintiff obtained class certification and prevailed on the merits, any recovery could be delayed for years by an appeal. A large statutory fees recovery in this case, which would be driven by the large size of the Class, would likely be impossible to recover due

in part to the fact that Discover would have every incentive to litigate appeals of any such judgment as far as possible over many years. The Settlement provides substantial relief to Class Members without further delay.

Given the significant risk Class counsel shouldered in taking this case, a modest three percentage point increase of the 30% baseline recovery reflects the market rate for their legal services. *See Kolinek*, 311 F.R.D. at 502–03 (concluding that to reflect the market rate, the baseline fee award should be increased to 36% of the net Settlement fund based on risks associated with the litigation). Accordingly, Class counsel request an award of 33% of the net settlement fund.

     3.    <u>Other factors the Seventh Circuit has identified as relevant to the market rate support Class Counsel's fee request.</u>

The Seventh Circuit has held that the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Each factor supports Class Counsel's requested fee.

        a.    *Class counsel's risk of nonpayment supports the requested fee.*

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958. Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The

lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted) . Prosecution of this action has involved significant financial risk. Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery. Terrell Decl. ¶ 17-19. Class Counsel litigated this case aggressively for over a year before participating in mediation. *Id.* ¶ 21.

> b. *Class Counsel's performance supports the requested fee.*

The requested fee award reasonably reflects the "market price" given the quality of Class Counsel's performance. *See Sutton*, 504 F.3d at 693. Despite the challenges described above, by applying their skill and experience, Class Counsel negotiated a Settlement that requires Discover to pay $5,000,000 into a Settlement Fund out of which all eligible Class Members will receive a *pro rata* share following payments for class notice and settlement administration, and any attorneys' fees and service awards approved by the Court. With one month remaining in the claims period, the Settlement Administrator already has received 49,043 claims, which amounts to a 2.76% claims rate. Even if the claims rate rises, Plaintiff estimates claimants will receive awards in line with in other TCPA settlements. *See Wright*, 2016 WL 4505169 at *8–9 (approving TCPA settlement where each claimant receive $45); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving settlement where recovery per claimant was $52.50); *Capital One*, 80 F. Supp. 3d at 789 (granting final approval where each class member would be awarded $39.66); *Kolinek*, 311 F.R.D. at 493–94 ($30); *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement class members

received approximately $71.16); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40). This excellent result supports settlement approval.

c.   *The stakes of the case support the requested fee.*

This action involves more than 1.8 million Class Members who allegedly received harassing, unlawful calls from Discover. Although the TCPA provides for statutory damages, for most Class Members, the cost and risk of individual litigation is too daunting, and the costs to successfully prosecute even an individual action are so high, that a class action is realistically the only way to obtain any relief. Those who wish to pursue individual litigation can, of course, opt out of the class settlement. Thus far, only 54 members of the Class have opted out. As most class members likely would not have received any relief without the assistance of Class counsel, the requested fee is reasonable.

**B.    The service award to the Class Representative should be approved.**

Service awards (sometimes called "incentive awards") compensating named plaintiffs for work done on behalf of the class are routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

The requested service awards of $15,000 for named Plaintiff Sumner Davenport and former named Plaintiff Polly Hansen are reasonable. Ms. Davenport and Ms. Hansen worked with Class Counsel to investigate the case, were kept abreast of the proceedings through

litigation and settlement, and reviewed and approved the proposed settlement. Ms. Hansen was the original named plaintiff in this action but had to withdraw as a plaintiff due to serious illness. Dkt. No. 50. Before her illness made it impossible to continue representing the Class, Ms. Hansen had spent significant time working with Class counsel to respond to discovery requests and support Class counsel's investigation of her claims. *Id.* ¶ 2. Moreover, the amount requested here is consistent with awards approved by courts this District and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Craftwood Lumber Co.*, 2015 WL 1399367 (awarding $25,000 service award to plaintiff in TCPA case); *In re Sw. Airlines Voucher Litig.*, No. 110CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 service awards to both named plaintiffs); *Heekin v. Anthem, Inc.*, 05-cv-01908-TWP-TAB, 2012 WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection).

## V.  CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant their motion and award Class Counsel attorneys' fees in the amount of $1,458,600, which amounts to 33.33% of the Settlement Fund net notice expenses. Class counsel further requests that the Court approve a service award in the amount of $15,000 to named Plaintiff Sumner Davenport and a service award in the amount of $15,000 to former named Plaintiff Polly Hansen.

RESPECTFULLY SUBMITTED AND DATED this 19th day of June, 2017.

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email:  bterrell@terrellmarshall.com
    Jennifer Rust Murray, *Admitted Pro Hac Vice*
    Email:  jmurray@terrellmarshall.com
    Mary B. Reiten, *Admitted Pro Hac Vice*
    Email:  mreiten@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone:  (206) 816-6603
    Facsimile:  (206) 319-5450

    Alexander H. Burke
    Email:  aburke@burkelawllc.com
    Daniel J. Marovitch
    Email:  dmarovitch@burkelawllc.com
    BURKE LAW OFFICE, LLC
    155 North Michigan Avenue, Suite 9020
    Chicago, Illinois 60601
    Telephone:  (312) 729-5288
    Facsimile:  (312) 729-5289

    Adam R. Gonnelli, *Admitted Pro Hac Vice*
    Email:  gonnellia@thesultzerlawgroup.com
    THE SULTZER LAW GROUP PC
    280 Highway 35, Suite 304
    Red Bank, New Jersey 07701
    Telephone:  (732) 741-4290
    Facsimile:  (888) 749-7747

    Innessa S. Melamed, *Admitted Pro Hac Vice*
    Email:  imelamed@faruqilaw.com
    FARUQI & FARUQI, LLP
    685 Third Avenue, 26th Floor
    New York, New York 10017
    Telephone:  (212) 983-9330
    Facsimile:  (212) 983-9331

*Attorneys for Plaintiff and the Proposed Classes*

- 17 -

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on June 19, 2017, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

> Julia B. Strickland
> Email: jstrickland@stroock.com
> Arjun P. Rao, *Admitted Pro Hac Vice*
> Email: arao@stroock.com
> STROOCK & STROOCK & LAVAN LLP
> 2029 Century Park East Suite 1600
> Los Angeles, California 90067-3086
> Telephone: (310) 556-5800
> Facsimile: (310) 556-5959
>
> Mark B. Blocker
> Email: mblocker@sidley.com
> J. Simone Jones
> Email: simone.jones@sidley.com
> SIDLEY AUSTIN LLP
> One South Dearborn
> Chicago, Illinois 60603
> Telephone: (312) 853-7000
> Facsimile: (312) 853-7036
>
> *Attorneys for Defendants*

DATED this 19th day of June, 2017.

> TERRELL MARSHALL LAW GROUP PLLC
>
>
> By:  /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
>     Beth E. Terrell, *Admitted Pro Hac Vice*
>     Email: bterrell@terrellmarshall.com
>     936 North 34th Street, Suite 300
>     Seattle, Washington  98103
>     Telephone:  (206) 816-6603
>     Facsimile:  (206) 319-5450
>
> *Attorneys for Plaintiff*

- 18 -