UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| SUMNER DAVENPORT, Individually and on ) Behalf of All Others Similarly Situated, ) ) | Case Number 1:15-cv-06052 |
| Plaintiff, ) ) | |
| vs. ) ) | |
| DISCOVER FINANCIAL SERVICES and ) DISCOVER HOME LOANS, INC., ) ) | |
| Defendants. ) | |

_____

OBJECTION OF CLASS MEMBER JOHN W. DAVIS TO PROPOSED SETTLEMENT,
INCENTIVE AWARDS, AND ATTORNEYS' FEE AWARD;
NOTICE OF INTENT TO APPEAR

**TABLE OF CONTENTS**

I.  NOTICE OF INTENT TO APPEAR..................................................................................1

II.  INTRODUCTION ..........................................................................................................1

III.  ARGUMENT ...............................................................................................................3

    A.  The Proposed Settlement is Unfair, Unreasonable, and Inadequate........................3

    B.  Class Notice is Inadequate ...................................................................................13

    C.  The Attorneys' Fees Sought for a Nuisance Value Settlement are
    Excessive and Unwarranted..................................................................................13

    D.  The Incentive Awards Should be Denied ............................................................17

IV.  CONCLUSION..........................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Americana Art China Co. v. Foxfire Printing*
743 F.3d 243 (7th Cir. 2014) ................................................................... 15, 16

*Bailey v. Great Lakes Canning, Inc,*
908 F.2d 38 (6th Cir. 1990) ....................................................................... 18

*Baird v. Boies, Schiller & Flexner LLP*
219 F. Supp. 2d 510 (S.D.N.Y. 2002) ........................................................ 17

*Bochese v. Town of Ponce Inlet*
405 F.3d 964 (11th Cir. 2005) ..................................................................... 9

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) ................................................................................... 13

*Bosse v. Oklahoma*
137 S.Ct. 1 (2016) ..................................................................................... 20

*Bradley v. Discover Financial Services*
Northern District of California Case No. 4:11-cv-5746-YGR .......................... 6

*Bridgeview Health Care Center Ltd. v. Clark*
No. 09 C 5601, 2013 WL 1154206 (N.D. Ill. Mar. 19, 2013) ......................... 6

*Brytus v. Spang & Co.*
203 F.3d 238 (3d Cir. 2000) ....................................................................... 16

*Campbell-Ewald Co. v. Gomez*
136 S.Ct. 663 (2016) ................................................................................. 10

*Central RR & Banking Co. v. Pettus*
113 U.S. 116 (1885) ........................................................................ 13, 14, 18

*Chicano Police Officer's Assn. v. Stover*
624 F. 2d 127 (10th Cir. 1980) ................................................................... 14

*City of Detroit v. Grinnell Corp.*
495 F.2d 448 (2d Cir. 1974) ............................................................ 4, 14, 16

*City of Detroit v. Grinnell Corp.*
560 F.2d 1093 (2d Cir. 1977) ..................................................................... 14

*Cook v. Niedert*
142 F.3d 1004 (7th Cir. 1998) ................................................................... 19

*Cortec Industries Inc. v. Sum Holding LP*
    949 F.2d 42 (2d Cir. 1991) ........................................................................... 10

*Creative Montessori Learning Centers v. Ashford Gear LLC*
    662 F.3d 913 (7th Cir.2011) ......................................................................... 12

*Crutcher v. Logan*
    102 F.2d 612 (5th Cir. 1939) ........................................................................ 18

*Elizabeth M. v. Montenez*
    458 F.3d 779 (8th Cir. 2006) .......................................................................... 9

*Eubank v. Pella Corp.*
    753 F.3d 718 (7th Cir. 2014) ................................................................. 2, 4, 12

*Ewing v. SQM US, Inc.*
    2016 WL 5846494 (S.D. Cal. Sept. 29, 2016) ............................................. 10

*Farmer v. Brennan*
    511 U.S. 825 (1994) ....................................................................................... 7

*Farrar v. Hobby*
    506 U.S. 103 (1992) ..................................................................................... 14

*Flinn v. FMC Corp.*
    528 F.2d 1169 (4th Cir. 1975) ...................................................................... 18

*Florence Endocrine Clinic PLLC v. Arriva Medical, LLC*
    No. 16-17483, slip op. (11th Cir. June 5, 2017) ........................................... 10

*Florin v. Nationsbank*
    34 F.3d 560 (7th Cir. 1994) ..................................................................... 15-16

*FW/PBS, Inc. v. Dallas*
    493 U.S. 215 (1990) ....................................................................................... 9

*Galloway v. Kansas City Landsmen LLC*
    833 F.3d 969 (8th Cir. 2016) ........................................................................ 16

*Ganino v. Citizens Utilities Co.*
    228 F.3d 154 (2d Cir. 2000) .......................................................................... 10

*General Motors Corp. v. Devex Corp.*
    461 U.S. 648 (1983) ....................................................................................... 4

*Girsh v. Jepson*
    521 F.2d 153 (3d Cir. 1975) ........................................................................... 4

*Goldberger v. Integrated Resources, Inc.*
209 F.3d 43 (2d Cir. 2000)..................................................................... 16

*Gorenstein Enterprises v. Quality Care-U.S.A.*
874 F.2d 431 (7th Cir. 1989) ................................................................. 4

*Gortat v. Capala Brothers, Inc.*
949 F.Supp.2d 374 (E.D.N.Y. 2013) ....................................................... 18

*Granada Investments, Inc. v. DWG Corp*
962 F.2d 1203 (6th Cir. 1992) ............................................................... 18

*Groshek v. Great Lakes Higher Education Corp.*
2016 WL 6819697 (W.D. Wis. Oct. 4, 2016)....................................... 9

*Hannabury v. Hilton Grand Vacations Co.*
174 F. Supp. 3d 768 (W.D.N.Y. 2016) ................................................... 6

*Harman v. Lyphomed, Inc.*
945 F.2d 969 (7th Cir. 1991) ............................................................ 15-16

*Hensley v. Eckerhart*
461 U.S. 424 (1983)............................................................................... 17

*Hew Corp. v. Tandy Corp.*
480 F. Supp. 758 (D. Mass. 1979) ......................................................... 14

*Hohn v. United States*
524 U.S. 236 (1998)............................................................................... 20

*In re Armored Car Antitrust Litig.*
472 F. Supp. 1357 (N.D. Ga. 1979) ....................................................... 14

*In re Cendant Corp. Litig.*
264 F.3d 201 (3d Cir. 2001).................................................................... 4

*In re Continental Illinois Sec. Litig.*
962 F.2d 566 (7th Cir. 1992) ............................................................ 19, 20

*In re Dry Max Pampers Litig.*
724 F.3d 713 (6th Cir. 2013) ................................................................. 20

*In re General Motors Corp. Engine Interchange Litig.*
594 F.2d 1106 (7th Cir.1979) ................................................................. 3

*In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.*
55 F.3d 768 (3d Cir. 1995).............................................................. 4, 16

*In re Initial Pub. Offering Sec. Litig.*
    671 F.Supp.2d 467 (S.D.N.Y. 2009) ................................................................ 17

*In re Mexico Money Transfer Litig.*
    267 F.3d 743 (7th Cir. 2001) .................................................................................. 8

*In re Pet Food Prod. Liab. Litig.*
    629 F.3d 333 (3d Cir. 2010) .................................................................................. 4

*In re Synthroid Mktg. Litig.*
    264 F.3d 712 (7th Cir. 2001) .............................................................................. 19

*Kavowras v. N.Y. Times Co.*
    328 F.3d 50 (2d Cir. 2003) .................................................................................. 10

*Kincade v. General Tire Rubber Co.*
    635 F.2d 501 (5th Cir. 1981) .............................................................................. 18

*Krakauer v. Dish Network L.L.C.*
    2017 WL 2242952 (M.D.N.C. May 22, 2017) ...................................... 5, 6, 10

*Lewis v. Casey*
    518 U.S. 343 (1996) ............................................................................................... 9

*Leyse v. Lifetime Entm't Servs., LLC*
    2017 WL 659894 (2d Cir. Feb. 15, 2017) ........................................................ 10

*Lindsay v. Gov't Employees Ins. Co.*
    448 F.3d 416  (D.C. Cir. 2006) ............................................................................ 9

*Mahon v. Ticor Title Ins. Co.*
    683 F.3d 59 (2d Cir. 2012) .................................................................................... 9

*Maverick Media Group v. Hillsborough County*
    528 F.3d 817 (11th Cir. 2008) .............................................................................. 9

*Mirfasihi v. Fleet Mortgage Corp.*
    356 F.3d 781 (7th Cir. 2004) .............................................................................. 12

*Mohamed v. Off Lease Only, Inc.*
    No. 15-23352-cv-Cooke/Torres, slip op. (S.D. Fla. March 22, 2017) ............ 10

*Native American Arts, Inc. v. The Waldron Corp.*
    253 F.Supp.2d 1041 (N.D. Ill. 2003) ................................................................... 9

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir.1982) ............................................................................... 18

*Olden v. LaFarge Corp.*
    383 F.3d 495 (6th Cir. 2004) ........................................................ 9

*Ortiz v. Chop't Creative Salad Co.*
    89 F.Supp.3d 573 (S.D.N.Y. 2015).............................................. 21

*Parker v. Brown*
    317 U.S. 341 (1943)..................................................................... 10

*Patten v. Northern Trust Co.*
    703 F. Supp.2d 799 (N.D. Ill. 2010) ........................................... 10

*Pearson v. NBTY*
    772 F.3d 778 (7th Cir. 2014) ....................................................... 12

*Perdue v. Kenny A.*
    130 S.Ct. 1662 (2010)............................................................. 15-16

*Plummer v. Chemical Bank*
    91 F.R.D. 434 (S.D.N.Y. 1981) .................................................. 18

*Prado-Steiman ex rel. Prado v. Bush*
    221 F.3d 1266 (11th Cir. 2000) ..................................................... 9

*Public Interest Research Group v. Magnesium Elektron, Inc.*
    123 F.3d 111 (3d Cir. 1997)........................................................... 9

*Pugh v. Tribune Co.*
    521 F.3d 686 (7th Cir. 2008) ....................................................... 10

*Redman v. RadioShack*
    768 F.3d 622 (7th Cir. 2014) ......................................................... 7

*Reynolds v. Beneficial Nat'l Bank*
    288 F.3d 277 (7th Cir. 2002) ............................................... passim

*Rivera v. Wyeth-Ayerst Labs*
    283 F.3d 315 (5th Cir. 2002) ......................................................... 9

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*
    490 U.S. 477 (1989)..................................................................... 20

*Romero v. Dep't Stores Nat'l Bank*
    199 F.Supp.3d 1256 (S.D. Cal. 2016);

*Smith v. Aitima Med. Equip., Inc.*
    2016 WL 4618780 (C.D. Cal. July 29, 2016).............................. 10

*Safeco Ins. Co. of America v. Burr*
    551 U.S. 47 (2007)..................................................................... 7

*Sartin v. EKF Diagnostics, Inc.*
    2016 WL 3598297 (E.D. La. July 5, 2016). .................................. 10

*Shane Group, Inc. v. Blue Cross Blue Shield*
    825 F. 3d 299 (6th Cir. 2016) .................................................20-21

*Silberblatt v. Morgan Stanley*
    524 F.Supp.2d 425 (S.D.N.Y. 2007)......................................... 21

*Slade v. Board of School Directors*
    702 F.3d 1027 (7th Cir.2012) ..................................................... 7

*Spine Solutions v. Medtronic Sofamor Danek USA*
    620 F.3d 1305 (Fed. Cir. 2010)................................................... 9

*Spokeo Inc. v. Robins*
    136 S.Ct. 1540 (2016)................................................................ 8

*Staehr v. Hartford Fin. Servs. Group, Inc.*
    547 F.3d 406 (2d Cir. 2008)..................................................... 10

*State Oil Co. v. Khan*
    522 U.S. 3 (1997)..................................................................... 20

*Steinfeld v. Discover Financial Services, et al.*
    Northern District of California Case No. 3:12-cv- 01118-JSW ....... 6

*Susinno v. Work Out World Inc.*
    2017 U.S. App. LEXIS 12253 (3d Cir. 2017) .............................. 10

*Synfuel Tech. v. DHL Express (USA)*
    463 F.3d 646 (7th Cir. 2006) ............................................... passim

*Transamerica Ins. Co. v. South*
    125 F.3d 392 (7th Cir. 1997) ..................................................... 9

*Trustees v. Greenough*
    105 U.S. 527 (1882)............................................................. 13, 18

*U.S. Football League v. Nat'l Football League*
    887 F.2d 408 (2d Cir. 1989)..................................................... 17

*United States v. Hatter*
    532 U.S. 557 (2001)................................................................. 20

*United States v. Hays*
   515 U.S. 737 (1995) ............................................................................... 9

*United States v. Valencia-Trujillo*
   573 F.3d 1171 (11th Cir. 2009) ............................................................. 9

*Vought v. Bank of America, NA*
   901 F.Supp.2d 1071 (C.D. Ill. 2012) ..................................................... 3

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*
   396 F.3d 96 (2d Cir. 2005) .............................................................. 4, 13

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. III ......................................................................................... 9

## RULES AND STATUTES

47 U.S.C. §227 ........................................................................................ 1, 5

Fed. R. Civ. P. 23 ................................................................. 3, 9, 13, 14, 18

## SECONDARY MATERIALS

Black's Law Dictionary (Bryan A. Garner ed., 8th ed.2004) ........................ 7

BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT 28-33 (St. Paul:
   Thomson Reuters, 2016) .................................................................... 20

Joel Seligman, *The Implications of "Central Bank,"* 29 BUS. LAW. 1429, 1447 (1994) ............ 16

John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87
   HARV. L.REV. 1597, 1602 (1974) ..................................................... 19

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
   Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. REV. 1303, 1310-11 & n.21
   (2006) ............................................................................................... 19

Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-
   Check: Judicial Misgivings About "Reasonable Percentage" Fees in
   Common Fund Cases,* 18 GEO. J. LEGAL ETHICS 1453 (2004) ..................... 16

WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS § 15:65 (5th ed.
   2016) ............................................................................................... 15

## I.    NOTICE OF INTENT TO APPEAR

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the undersigned intends to appear at the Final Approval Hearing on September 14, 2017 at 9:00 a.m. in Courtroom 2319 – 23rd Floor at the United States District Court for the Northern District of Illinois located at 219 South Dearborn Street, Chicago, Illinois 60604 to present argument concerning objections articulated below.

## II.    INTRODUCTION

This is a class action against Discover Financial Services, a recidivist violator of the Telephone Consumer Protection Act ("TCPA"), a statute that prohibits spam phone calls and imposes liability of $500 per call – trebled to $1,500 per call for willful (i.e., knowing or reckless) violators.  *See* 47 U.S.C. §227(b)(3)(B) ($500 statutory damages for each violation); 47 U.S.C. §227(b)(3)(C) (permitting trebling, to $1,500 each for "willful" violations).   John W. Davis is a class member who received individual e-mail notice of the Proposed Settlement, Ex A hereto (e-mail notice), who submitted a claim, *see* Ex. B hereto (Claim Form Receipt), and who now respectfully objects to the Proposed Settlement, proposed "incentive awards" and proposed attorneys' fees.

The class consists of 1,831,697 persons, many of whom received multiple unconsented phone calls – the pleadings aver that the original named plaintiff Dr. Polly Hansen received thirty calls, and that her successor Sumner Davenport received thirteen.   Conservatively assuming that class members averaged fewer than that – say, just ten calls apiece – the TCPA damages are substantial: $9,158,485,000 if the recidivist violator acted innocently, and $27,475,455,000 if its violations were "willful" (that is to say, knowing or reckless). Yet Davenport seeks to settle the matter and to release class members' billions of dollars in TCPA claims for a meager $5 million.

That's less than six one-hundredths of a cent on the dollar if Discover Financial's violations were innocent, and less than two one-hundredths of a cent on the dollar if the recidivist violator were found to have acted either knowingly or with a reckless disregard of the law.  Such a settlement cannot be approved as reasonable, fair, and adequate.  Quite otherwise, for Seventh  Circuit precedent requires this Court to "begin by 'quantify[ing] the net expected value of continued

- 1 -

litigation to the class, since a settlement for less than that value would not be adequate.'" *Synfuel Techs v. DHL Express (USA),* 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 284-85 (7th Cir. 2002)). And the class claims in this case have a settlement value many, many times the $5 million that Davenport has asked this Court to approve. *Infra at* 3-8.

Some cases settle for pennies on the dollar. This one settled for hundredths of a cent on the dollar. Why? How can such a miniscule recovery be justified? Davenport and Class Counsel offer no good explanation. In fact, neither Davenport's Preliminary Approval Motion, nor the Class Notice her lawyers sent out to inform class members of the Proposed Settlement, ever clearly disclosed that this is a multibillion dollar case, let alone that the $5 million obtained represents a recovery not of pennies on the dollar, but of mere hundredths-of-a-cent on the dollar. But why would the parties omit such critical information from their Motion for Preliminary Approval of the Settlement, and from the Class Notice? And why would the named plaintiffs and Class Counsel accept a measly $5 million to settle claims worth billions of dollars? Could this be yet another consumer class action "case in which 'the lawyers support the settlement to get fees; the defendants support it to evade liability; [and] the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information'"? *Eubank v. Pella Corp.,* 753 F.3d 718, 729 (7th Cir. 2014) (citation omitted).

The Proposed Settlement makes sense for Class Counsel, who can file case after case asserting claims for billions of dollars in TCPA statutory damages, knowing that defendants can be counted on to settle them for nuisance value – thereby allowing the plaintiffs' attorneys to collect typically uncontested fees awards compensating them well beyond the reasonable value of their services. The Proposed Settlement likely makes sense for the named Plaintiffs as well, who by effectively abandoning the class's claims for billions of dollars in TCPA damages in order to request $15,000 apiece as "incentive awards" for their purported "service" to the class. But it does not make sense for the class whose claims they compromise for the tiniest fraction of a cent on the dollar.

Davis accordingly objects, both to the adequacy of the Proposed Settlement, and also to the proposed award of attorneys' fees and incentive bonuses to the two named plaintiffs. Attorneys should not receive generous fee awards for obtaining mere nuisance-value settlements. And named Plaintiffs should not receive "incentive awards" giving them an incentive to abandon the class's best interests in order to pursue their own. *Infra at* 13-21.

## III. ARGUMENT

### A. The Proposed Settlement is Unfair, Unreasonable, and Inadequate

Rule 23(e)(2) provides that this Court may approve a class-action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the "district court must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.'" *Synfuel Techs v. DHL Express (USA)*, 463 F.3d 646, 653 (7th Cir. 2006) (citation omitted). "The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Id.* at 653 (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 n.44 (7th Cir.1979)). That required balancing is fatal to the Proposed Settlement.

The Seventh Circuit holds "the district court should begin by 'quantify[ing] the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate.'" *Synfuel*, 463 F.3d at 653 (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)); *accord, e.g., Vought v. Bank of America, NA*, 901 F.Supp.2d 1071, 1083 (C.D. Ill. 2012). "Determining that value would require estimating the range of possible outcomes and ascribing a probability to each point on the range," the Seventh Circuit held in *Reynolds*, 288 F.3d at 285 (citing *In re General Motors Corp. Engine Interchange Litigation, supra*, 594 F.2d at 1132-33

n.44 and *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 806 (3d Cir.1995)).[1]

A district court's failure, in evaluating a settlement, "to quantify the value of plaintiffs' case" is grounds for reversal. *Synfuel,* 463 F.3d at 654; *see, e.g., Eubank v. Pella Corp.,* 753 F.3d 718, 727 (7th Cir. 2014) (reversing district judge who approved class action settlement but "didn't estimate the likely outcome of a trial, as he should have done in order to evaluate the adequacy of the settlement"). Where the "total amount sought could have reached $2 billion," the Seventh Circuit observed in *Reynolds,* "[e]ven if the class had only a 1 percent chance of prevailing, the expected value of its suit might reach $20 million. (This on the unrealistic assumption that the only possible outcomes were a $2 billion judgment and a zero judgment. Realistic intermediate possibilities would make the $20 million estimate expand)." *Reynolds,* 288 F.3d at 283. Clearly however, analysis must start with the best case for plaintiffs, *see id.,* and other circuits concur that a settlement cannot be approved if it falls outside the "range of reasonableness of the settlement fund in light of the best possible recovery."[2]

Here, one percent of Discover Financial's multi-billion dollar liability would come to much more than the hypothetical figures in *Reynolds.* Davenport's Preliminary Approval Motion says that "the Settlement Agreement requires Discover to pay $5,000,000 into a Settlement Fund for a class consisting of approximately 1,831,697 unique telephone numbers purchased by Discover from

---

[1] *Reynolds* adds that the figures can be "discounted to the present using a reasonable . . . interest rate," unless of course "the court would award prejudgment interest in a case litigated to judgment, discounting might wash out of the picture altogether." *Reynolds,* 288 F.3d at 285. Such discounting generally should "wash out of the picture" given the Seventh Circuit's "rule that prejudgment interest should be presumptively available to victims of federal law violations." *Gorenstein Enterprises v. Quality Care-U.S.A.,* 874 F.2d 431, 436 (7th Cir. 1989); *cf. General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655 (1983) ("prejudgment interest should ordinarily be awarded").

[2] *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *accord, e.g., Wal-Mart Stores, Inc. v. Visa USA, Inc.,* 396 F.3d 96, 117, 119 (2d Cir. 2005); *In re Pet Food Prod. Liab. Litig.,* 629 F.3d 333, 352-56 (3d Cir. 2010) (reversing settlement approval because parties provided inadequate information concerning the magnitude of defendants' potential liability); *In re Cendant Corp. Litig.,* 264 F.3d 201, 241-42 (3d Cir. 2001) (affirming settlement approval where district court found that a $3.2 billion settlement fund "represents a 36-37% recovery rate by the plaintiff Class"); *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.,* 55 F.3d 768, 806-07 (3d Cir. 1995); *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975) (following *Grinnell*).

thirteen 'lead generators . . . .'" DE78:1.  Thus, the $5 million settlement represents only $2.73 per class member.  Yet, if each class member received only a single call, the baseline TCPA damages, at $500 per call, would come to $915,848,500 – just shy of one billion dollars.  If Discover Financial's violations were willful (i.e., knowing or reckless), the potential damages treble – taking this up to a $2.7 billion case.  *See* 47 U.S.C. §227(b)(3)(B) ($500 statutory damages for each violation); 47 U.S.C. §227(b)(3)(C) (permitting trebling, to $1,500 each for "willful" violations).  But class members averaged more than one call apiece.  The pleadings aver that named plaintiff Dr. Polly Hansen received thirty, and that her successor Sumner Davenport received thirteen.[3]  Conservatively assuming that class members averaged only ten calls apiece, the class's claims come to over $9 billion if Discover Financial acted innocently, and over $27 billion if it acted willfully – either knowingly, or with reckless disregard of an obvious danger.  Assuming the chance of winning such a judgment is only one percent, the value of the potential $27 billion judgment is $270 million.  That makes Davenport's $5 million Proposed Settlement facially inadequate.  The $5 million Proposed Settlement is a tiny fraction of what the case is worth under *Reynolds* and *Synfuel,* even assuming that Davenport has only a one percent chance of recovering $1,500 per call.

The court must, moreover, consider the possibility of an intermediate recovery, of something less than $1,500 per call.  In the most recent TCPA case to go to trial, for example, the class obtained a judgment of only $1,200 per call – not the full $1,500 that they might have received.  *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2242952 (M.D.N.C. May 22, 2017).  In *Krakauer,* the jury returned a verdict of only $400 per call, having been instructed that the $500 statutory damages were an upper cap on liability. *See Krakauer*, 2017 WL 2242952, at *2 (citing *Krakauer* Docket Entry No. 292 (Jan. 19, 2017 verdict sheet)).

The $400 figure was then trebled "to deter Dish and to give suitable weight to the seriousness and scope of the violations Dish committed," involving "over 50,000 connected calls to over 18,000

---

[3] The Preliminary Approval Motion acknowledges that the case was filed alleging that the original named plaintiff, Dr. Polly Hansen, had "received over thirty autodialed calls to her cell phone from Discover or its agents without her consent."  DE78:3; *see* DE1:6¶35 (Hansen Complaint).  The Amended Complaint substituted named plaintiff Sumner Davenport, alleging that he "has received thirteen calls from, or on behalf of, Defendants from the same telephone number, 855-245-9353."  DE55:6¶31.

private individuals." *Krakauer*, 2017 WL 2242952, at *13.[4]   The district court observed that the TCPA's statutory damages are "'specifically designed to be disproportional to the harm suffered'" both to deter violations and to encourage enforcement. *Id.*, (quoting *Hannabury v. Hilton Grand Vacations Co.*, 174 F. Supp. 3d 768, 771 (W.D.N.Y. 2016)).  Noting that an earlier $6 million fine had been insufficient motivation to change Dish's practices, the district court concluded that "[a] damages award that is an order of magnitude larger is warranted here." *Id.*

The *Krakauer* district court's direction to jurors that they could award "up to $500" appears to be error, given the statute's clear text authorizing "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 15 U.S.C. §227(b)(3)(B).  Thus, one could argue that the judgment in *Krakauer* **should have** been $1,500 per call, rather than $1,200 per call.  Still, conservatively assuming that a class of 1,831,697 persons received only ten calls apiece, a $1,200-per-call verdict in this case would come to $2,198,036,400.  Under *Reynolds,* even a one-percent chance of such a verdict is worth about $219 million.

The foregoing scenarios assume that plaintiffs could succeed in demonstrating TCPA violations' willfulness – which seems quite likely, given both Discover Financial's status as a recidivist violator that has previously settled TCPA claims, and the relaxed standard for demonstrating willfulness of such statutory violations.  The Amended Complaint explains that "Discover Financial has previously been the subject of litigation for its unlawful telemarketing practices in *Bradley v. Discover Financial Services*, United States District Court, Northern District of California Case No. 4:11-cv-5746-YGR, and *Steinfeld v. Discover Financial Services, et al.,* United States District Court, Northern District of California Case No. 3:12-cv- 01118-JSW," which

---

[4] The *Krakauer* district court distinguished *Bridgeview Health Care Center Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *7–8 (N.D. Ill. Mar. 19, 2013) (Valdez, Mag. J.), *aff'd on other grounds*, 816 F.3d 935 (7th Cir. 2016), in which damages were not trebled because the defendant there was "a naïve small business" drawn into a marketer's ongoing illegal fax advertising practice, whereas the defendant Dish was a large business cognizant of the violations, requiring a large damages award to deter future misconduct. *Krakauer*, 2017 WL 2242952, at *12-13.

it had paid $8.7 million to settle. DE55:4¶¶23-24. Given the prior TCPA proceedings against it, Discover Financial knew of the risk of incurring further TCPA violations, and yet apparently failed to take the precautions needed to avoid them. Just as in *Redman v. RadioShack*:

> The company had to know that there was a risk of error because the identical risk had materialized previously. Knowing the risk and failing to take any precaution against it— though a completely adequate precaution would have cost nothing—were indicative of willful violation.

*Redman v. RadioShack,* 768 F.3d 622, 638 7th Cir. 2014). That the "violation probably was willful underscores the meagerness of the settlement value to class members." *Redman,* 768 F.3d at 638.

As the Seventh Circuit held in *Redman,* moreover, a statutory violation is deemed "willful" if it was merely "reckless" in the "civil law sense" that the danger of a violation was both obvious and easily avoidable:

> To act "willfully" is, for purposes of civil law, to engage in conduct that creates "an unjustifiably high risk of harm that is either known or so obvious that it should be known," *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)-reckless conduct, in other words, as held in *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 56- 60, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), but reckless conduct in the civil sense. Criminal recklessness is generally held to require "knowledge of a serious risk to another person, coupled with failure to avert the risk though it could easily have been averted, *Slade v. Board of School Directors,* 702 F.3d 1027, 1029 (7th Cir.2012); see also Black's Law Dictionary 1298-99 (Bryan A. Garner ed., 8th ed.2004), "whereas in civil cases at common law it is enough that the risk, besides being serious and eminently avoidable, is obvious; it need not be known to the defendant." *Slade v. Board of School Directors*, *supra,* 702 F.3d [1027,] 1029 [(7th Cir. 2012)].

*Redman,* 768 F.3d at 627.

This case's value for settlement evaluation purposes would, moreover, remain quite substantial even on the assumption that Davenport likely would fail to establish that Discover Financial's claims were "willful." Conservatively assuming that class members averaged only ten calls apiece, the TCPA damages – even for innocent violations – still are fairly substantial: $9,158,485,000. Assuming, further, that the plaintiff class would have only a ten percent chance of prevailing on claims for innocent violations, ten percent of the $9 billion figure would come to $900 million. The $5 million Proposed Settlement does not begin to approach the boundaries of any

reasonable valuation of the claims that Davenport seeks to compromise. The case should have settled for hundreds of millions, or else been litigated further; the $5 million settlement proposed by the parties is patently inadequate.

Some cases settle for pennies on the dollar, when the claims are very weak, or the defendant is in poor financial condition and is teetering on the brink of bankruptcy. But Class Counsel offer no good explanation to justify settling this case for hundredths-of-a-cent on the dollar.

A trifling recovery might be justified on the ground that the claims asserted are essentially frivolous. Extraordinarily low settlements can sometimes be explained by extraordinarily weak claims, since a court evaluating the settlement's adequacy "must ask whether the value of relief in the aggregate is a reasonable approximation of the value of plaintiffs' claim." *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 748 (7th Cir. 2001). But that cannot be the explanation here, where Davenport's papers attest: "Plaintiff continues to believe that her claims against Defendants have merit and that she would make a compelling case if her claims were tried." DE78:11 (Preliminary Approval Motion). With the litigation and discovery conducted so far, Davenport insists that she "believed she would prevail at class certification and on the merits." DE78:1. So the case apparently is a strong one, rather than one suitable for settlement at nuisance value for the tiniest fraction-of-a-cent-on-the-dollar.

The risk that the case might be lost on the basis of one or more potential defenses cannot justify accepting such a trivial a nuisance value settlement. Davenport notes that "Discover asserts that it obtained the leads for the calls from thirteen 'lead generators,' each of whom obtained the consent of the called parties," and that "the calls were not made for telemarketing purposes." DE78:2. But she never contends that Discover Financial's defenses were so substantial that the class's claims should be discounted by more than 99%.

Davenport suggests the class's claims still may be deeply discounted, however, because Discover Financial "maintains that Ms. Davenport and some class members lack Article III standing," DE78:12, under the holding of *Spokeo Inc. v. Robins,* 136 S.Ct. 1540 (2016). If that were a serious concern, however, it would be fatal to Davenport's ability to represent a class. *See Mahon*

*v. Ticor Title Ins. Co.,* 683 F.3d 59, 62-64 (2d Cir. 2012). One who lacks Article III standing to litigate under *Spokeo* would also lack standing to enter a settlement releasing other class members' claims – since "subject matter jurisdiction is a prerequisite to class certification."[5] The parties are powerless to confer subject-matter jurisdiction by their agreement or stipulation, since Article III "standing . . . is jurisdictional and not subject to waiver."[6] Nor is there any exception to Article III's standing requirements when a class action settles.[7] Thus, Discover Financial's contentions that Davenport lacks Article III standing cannot possibly justify entering a settlement – let alone settling the case for a tiny fraction of its value.

Any contention that problems with Article III standing justify a lowball settlement are further undermined by Davenport's assertion that she "is confident that she would defeat" Discover's Article III standing argument." DE78:12. Her confidence is well grounded – appellate decisions

---

[5] *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004); *accord Synfuel Tech. v. DHL Express (USA),* 463 F.3d 646, 649 (7th Cir. 2006) (on appeal from class action settlement approval: "Although the issue of subject matter jurisdiction was not addressed below, it should have been; only after several supplemental filings have we finally been able to assure ourselves that the district court's jurisdiction was proper."); *see also Mahon,* 683 F.3d at 62-64 (Article III standing required before a class may be certified); *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 420 (D.C. Cir. 2006) ("subject matter jurisdiction is a prerequisite to class certification"); *Elizabeth M. v. Montenez,* 458 F.3d 779, 784 (8th Cir. 2006) ("before certifying a class ... a district court must ensure that it has Article III jurisdiction"); *Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315, 318-19 (5th Cir. 2002) (district court reversed for failing to demand a showing of Article III standing before certifying a class); *Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000) ("Prior to the certification of a class and before undertaking any analysis under Rule 23, the court must determine that at least one named class representative has Article III standing to raise each class claim.").

[6] *Lewis v. Casey,* 518 U.S. 343, 348-49 & n.1 (1996); *see United States v. Hays,* 515 U.S. 737, 742 (1995); *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230-31 (1990); *Spine Solutions v. Medtronic Sofamor Danek USA,* 620 F.3d 1305, 1319 (Fed. Cir. 2010); *Native American Arts, Inc. v. The Waldron Corp.,* 253 F.Supp.2d 1041, 1045 (N.D. Ill. 2003). "Like any jurisdictional requirement, standing cannot be waived." *Public Interest Research Group v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 n.5 (3d Cir. 1997). It is, indeed, well-established that "constitutional standing requirements are jurisdictional in that they 'involve[] the court's competency to consider a given type of case,' [which] therefore, 'cannot be waived or otherwise conferred upon the court by the parties.'" *Maverick Media Group v. Hillsborough County,* 528 F.3d 817, 819 (11th Cir. 2008) (quoting *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005)); *see also Transamerica Ins. Co. v. South,* 125 F.3d 392, 396 (7th Cir. 1997) ("since standing is a jurisdictional matter, this court must determine whether Phoenix had standing to bring its counterclaim and whether Phoenix has standing to pursue this appeal, regardless of Transamerica's waiver"); *United States v. Valencia-Trujillo,* 573 F.3d 1171, 1177 (11th Cir. 2009)(quoting *Bochese*).

[7] *See Synfuel,* 463 F.3d at 649; *Groshek v. Great Lakes Higher Education Corp.*, No. 15-CV-143, 2016 WL 6819697, at *7-8 (W.D. Wis. Oct. 4, 2016).

uniformly recognize that recipients of proscribed phone calls or texts clearly have Article III standing to assert TCPA claims.[8]  So hypothetical problems with Article III standing cannot explain the trifling amount accepted in settlement of claims worth billions of dollars.

In some cases, of course, a trifling recovery might be justified on the ground that the settling defendant cannot afford to pay much more.  But that explanation has no relevance here, where the central defendant is Discover Financial Services – an extremely profitable company that clearly can afford to pay billions of dollars.

Discover Financial's most current filing with the SEC on Form 10-K is readily available online, and is judicially noticeable.[9]  It reveals that for the latest fiscal year Discover Financial's

---

[8] *See, e.g., Florence Endocrine Clinic PLLC v. Arriva Medical, LLC,* No. 16-17483, slip op. (11th Cir. June 5, 2017) (unwanted faxes sufficient to establish Article III standing in a TCPA case); *Leyse v. Lifetime Entm't Servs., LLC,* No. 16- 1133-CV, 2017 WL 659894, at *1 (2d Cir. Feb. 15, 2017) (receipt of voicemail messages established standing); *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 U.S. App. LEXIS 12253, at *11 (3d Cir. 2017) (finding Article III standing for single call TCPA claim); *Van Patten v. Vertical Fitness Group, LLC,* 847 F.3d 1037, 1042-43 (9th Cir. 2017); *Mohamed v. Off Lease Only, Inc.,* No. 15-23352-cv-Cooke/Torres, slip op. (S.D. Fla. March 22, 2017); *Krakauer v. Dish Network L.L.C.,* No. 1:14-CV-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("While class members did not necessarily pick up or hear ringing every call at issue in this case, each call created, at a minimum, a risk of an invasion of a class member's privacy" for purposes of Article III standing); *see also Campbell-Ewald Co. v. Gomez,* 136 S.Ct. 663, 679 (2016) (Roberts, C.J., dissenting) (Regarding TCPA claim:  "All agree that at the time Gomez filed suit, he had a personal stake in the litigation.  In his complaint, Gomez alleged that he suffered an injury in fact when he received unauthorized text messages from Campbell.").  Only a handful of district courts have held otherwise.  *See, e.g., Ewing v. SQM US, Inc.,* No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *1 (S.D. Cal. Sept. 29, 2016); *Romero v. Dep't Stores Nat'l Bank,* 199 F.Supp.3d 1256, 1265 (S.D. Cal. 2016); *Smith v. Aitima Med. Equip., Inc.,* No. EDCV1600339ABDTBX, 2016 WL 4618780, at *4 (C.D. Cal. July 29, 2016); *Sartin v. EKF Diagnostics, Inc.,* No. CV 16-1816, 2016 WL 3598297, *3 (E.D. La. July 5, 2016).

[9] This Court is entitled to judicially notice widely reported financial data. *See, e.g., Parker v. Brown,* 317 U.S. 341, 363 (1943) (taking judicial notice "of available data of the raisin industry in California"); *Pugh v. Tribune Co.,* 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("[w]e may take judicial notice of documents in the public record, including publicly reported stock prices"); *Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 166 n.8 (2d Cir. 2000) (same) (stock quotations). It is, moreover, entitled to judicially notice a company's filings with the SEC.  *See Staehr v. Hartford Fin. Servs. Group, Inc.,* 547 F.3d 406, 425 (2d Cir. 2008); *Kavowras v. N.Y. Times Co.,* 328 F.3d 50, 57 (2d Cir. 2003); *Cortec Industries Inc. v. Sum Holding LP,* 949 F.2d 42, 47-48 (2d Cir. 1991); *Patten v. Northern Trust Co.,* 703 F. Supp.2d 799,  n.2 (N.D. Ill. 2010) ("The court takes judicial notice of matters of public record, such as stock prices and SEC filings.").

"Net income was $2.4 billion, or $5.77 per diluted share, compared to $2.3 billion, or $5.13 per diluted share, in the prior year."  Form 10-K at 49 (available online: https://www.sec.gov/Archives/edgar/data/1393612/000139361217000012/dfs1231201610k.htm). The company's management explained that they had so much cash lying around that "We repurchased approximately 34 million shares, or 8%, of our outstanding common stock for $1.9 billion."  *Id.*  "In the third quarter of 2016, we increased our quarterly common stock dividend from $0.28 per share to $0.30 per share and maintained a $0.30 per share dividend for the fourth quarter of 2016."  *Id.* at 44.  Dividends paid to shareholders of common and preferred stock came to $514 million for the year.  *Id.* at 89.  At year-end, Discover Financial had $11.9 billion in cash and cash equivalents on hand.  *Id.* at 89.

This is not a company that would be financially strained by paying a few hundred million dollars (or even a couple billion) to settle the claims exposing it to tens of billions of dollars in liability.   A $5 million settlement cannot be approved on the ground that paying more would strain Discover Financial's resources, or that a larger judgment would be uncollectible.

Davenport cites the delay inherent in litigation as a reason for finding the Proposed Settlement nonetheless adequate:  "Realistically, it could be at least a year before the case would proceed to trial." DE78:16.  Davis respectfully submits that it would be worth waiting ***several*** years to turn the proposed $5 million settlement into a judgment of several billion dollars.  No rational class member would take a paltry sum in settlement now, when litigating is apt to produce vastly larger returns – with no risk to absent class members beyond foregoing their minuscule share of this proposed settlement.

Davenport's Preliminary Approval Motion asserts that this Court should nevertheless defer to Class Counsel's solemn opinion that the settlement is a good one, because "Plaintiff's counsel are competent and experienced in class action litigation." DE78:15.  But the Seventh Circuit has rather different ideas about the wisdom of deferring to Class Counsel.  *See, e.g., Pearson v. NBTY,* 772

F.3d 778, 787 (7th Cir. 2014); *Redman v. RadioShack,* 768 F.3d 662, 629 (7th Cir. 2014); *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir. 2004). The Seventh Circuit "insist[s] that district courts 'exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions.'" *Synfuel Techs. v. DHL Express (USA),* 463 F.3d 646, 652 (7th cir. 2006) (quoting *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002)). The Seventh Circuit has, indeed, "gone so far as to characterize the [district] court's role as akin 'to the high duty of care that the law requires of fiduciaries.'" *Synfuel,* 463 F.3d at 652-53 (quoting *Reynolds,* 288 F.3d at 279).

The Seventh Circuit and other courts have often "'remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers – the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests.'" *Pearson v. NBTY,* 772 F.3d at 787 (quoting *Eubank v. Pella,* 753 F.3d 718, 720 (7th Cir. 2014) (quoting *Creative Montessori Learning Centers v. Ashford Gear LLC,* 662 F.3d 913, 918 (7th Cir.2011) (collecting cases))). The Seventh Circuit has repeatedly warned "that 'because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.'" *Eubank v. Pella Corp.,* 753 F.3d 718, 723 (7th Cir. 2014) (quoting *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir.2004) (citations omitted)). As a corollary to its distrust of class counsel's recommendations, moreover, the Seventh Circuit has repeatedly emphasized "objectors play an essential role in judicial review of proposed settlements of class actions."[10]

---

[10] *Pearson v. NBTY,* 772 F.3d 778, 787 (7th Cir. 2014). "It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of the settlement generally." *Reynolds,* 288 F.3d at 288; *see also Eubank v. Pella Corp.,* 753 F.3d 718, 721 (7th Cir. 2014) ("The case underscores the importance both of objectors (for they are the appellants in this case – without them there would have been no appellate challenge to the settlement) and of intense judicial scrutiny of proposed class action settlements.").

The Proposed Settlement's recovery of just $5 million, given that the class stands to recover billions of dollars if the case were the litigated to judgment, is grossly insufficient. It cannot be approved as fair, reasonable, and adequate.

### B.     Class Notice is Inadequate

It should also be apparent that notice to the class also is inadequate, for it fails to inform the class of how much really is at stake. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart,* 396 F.3d at 113-114. There are "no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Id.* Still, notice is adequate only if it fairly apprises class members of their options – including what they are giving up. *Id.* The Class Notice fails that test, for it fails to advise class members of the magnitude of the claims being compromised for just $5 million dollars, let alone what a trivial percentage of the overall stakes the Proposed Settlement represents.

### C.     The Attorneys' Fees Sought for a Nuisance Value Settlement are Excessive and Unwarranted

Class Counsel here seek an award of attorneys' fees under the common-fund doctrine established in *Trustees v. Greenough,* 105 U.S. 527 (1882), and *Central RR & Banking Co. v. Pettus*, 113 U.S. 116 (1885), under which "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) (following *Greenough* and *Pettus*). It is an equitable doctrine, "rest[ing] on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing,* 444 U.S. at 478.

*Greenough* and *Pettus* both condemn excessive fee awards. *Greenough* warned that common-fund allowances too often "have been excessive, and perhaps illegal; and we would be very far from expressing our approval of such large allowances to . . . counsel as have sometimes been made, and which have justly excited severe criticism." *Greenough,* 105 U.S. at 536. Common-fund allowances for counsel's attorneys' fees are permitted only "if made with moderation and a jealous

regard to the rights of those who are interested in the fund." *Id.* at 536-37. Thus, in *Greenough* itself, the attorneys' fee award was limited to sums the named plaintiff had actually disbursed to his lawyers in the course of pursing claims on behalf of a class of bondholders – a flat, unenhanced, lodestar award. *See id.* And in *Pettus,* the Supreme Court slashed an unreasonably generous 10% fee award to just 5% of the fund recovered. *See Pettus,* 113 U.S. at 128. The Second Circuit has explained that

> "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so. To this end courts must always heed the admonition of the Supreme Court in *Trustees v. Greenough, supra,* when it advised that fee awards under the equitable fund doctrine were proper only 'if made with moderation and a jealous regard to the rights of those who are interested in the fund.' 105 U.S. at 536."

*City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098-99 (2d Cir. 1977) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469 (2d Cir. 1974)); *accord, e.g., Hew Corp. v. Tandy Corp.,* 480 F. Supp. 758, 760 (D. Mass. 1979); *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1382 (N.D. Ga. 1979).

Applying these principles, Class Counsel's application for 33% of the Settlement Fund should be denied.

Results matter: A *de minimis* recovery deserves a *de minimis* fee, if any at all. As a general rule, nuisance value settlements ought not be encouraged with fee awards. *See Farrar v. Hobby,* 506 U.S. 103, 121-22 (1992) (a "nuisance settlement that does not promote any public purpose cannot support award of attorney's fees") (O'Connor, J., concurring; citing *Chicano Police Officer's Assn. v. Stover,* 624 F. 2d 127, 131 (10th Cir. 1980)). Grounded as it is in equity, moreover, the common-fund doctrine ought not be applied in consumer class actions to reward counsel who settle large claims for mere nuisance value. That would encourage inadequate settlements designed to enrich lawyers at the expense of the classes of consumers whose interests they compromise.

Awarding attorneys' fees for obtaining nuisance value settlements sustains a business model under which plaintiffs' firms can be expected to file class actions asserting multibillion-dollar claims, counting on defendants facing potentially astronomical liability to settle the cases for

nuisance value payments – thereby eliminating any serious risk that the plaintiffs' lawyers will have to expend thousands more hours taking a case to trial, and likely compensating them at extravagant multiples of their reasonable hourly rates for the time they have actually spent. *Cf.* WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS § 15:65 (5th ed. 2016) (warning against arbitrary "benchmark" percentage awards whose superficial consistency "may be completely unrelated to the inconsistency of counsel's profit (multiplier) across cases.")

That is not a business model that the judiciary should encourage.

Here, of course, Class Counsel have not even informed the Court of how many hours they worked on the matter. That should be fatal to their fee application.

The Supreme Court holds that in the context of contingent fee class action litigation, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake" the case, that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective," and that "the presumption is a 'strong' one." *Perdue v. Kenny A.,* 130 S.Ct. 1662, 1672-73 (2010) (citations omitted). Under *Perdue,* class counsel's lodestar thus establishes the presumptive market rate for their compensation. *See id.* Yet Class Counsel's fee application fails to identify either how many hours the attorneys worked, let alone their reasonable hourly rates. They argue instead that they are entitled to a third of the $5 million settlement fund, without any showing at all regarding what work they actually did.

The Seventh Circuit holds that whatever advantages percent-of-fund awards might arguably have, district courts must retain discretion to award common-fund attorneys' fees based on the lodestar methodology, as in *Perdue,* multiplying the attorneys' hours by their reasonable hourly rates rather than as a percentage of the fund. *See, e.g., Americana Art China Co. v. Foxfire Printing,* 743 F.3d 243, 247-48 (7th Cir. 2014) (TCPA fee award); *Florin v. Nationsbank,* 34 F.3d 560, 565-66 (7th Cir. 1994); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991). Class Counsel who apply for a percentage of the fund without submitting their time records effectively usurp the district court's discretion to intelligently evaluate and choose the most appropriate methodology for any the case.

The precedents recognize that lodestar and percent-of-fund methodologies each have their own advantages and disadvantages – and particularly that "the lodestar method has an advantage over the percentage method in that it alleviates 'concerns that a percentage approach resulted in over-compensation for attorneys.'" *Americana Art China Co. v. Foxfire Printing,* 743 F.3d 243, 247-48 (7th Cir. 2014) (quoting *Harman,* 945 F.2d at 975) (affirming lodestar fee award in a TCPA class action); *see also Florin,* 34 F.3d at 565-66; *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48 (2d Cir. 2000). The advantage of the percentage approach is its ostensible simplicity, while its disadvantages include both its arbitrariness, and its tendency to produce excessive fee awards. *See Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48 (2d Cir. 2000). Advantages of the lodestar approach, on the other hand, include its objective basis and equitable character, grounded directly in work that the attorneys actually did, *see Perdue,* 130 S. Ct. at 1672, as well as its foreclosure of overcompensating lawyers for their time. *See Americana Art,* 743 F.3d at 247; *Harman,* 945 F.2d at 975; *Goldberger,* 209 F.3d at 48; *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469 (2d Cir. 1974) ("*Grinnell I*"). The two approaches' strengths are best combined: "A preferable approach would be to use the lodestar subject to a percentage of recovery cap." Joel Seligman, *The Implications of "Central Bank,"* 29 Bus. Law. 1429, 1447 (1994). Many appellate precedents strongly encourage such a "cross check." *See, e.g., Galloway v. Kansas City Landsmen LLC,* 833 F.3d 969, 974-75 (8th Cir. 2016); *Goldberger,* 209 F.3d at 49; *Brytus v. Spang & Co.,* 203 F.3d 238, 247 (3d Cir. 2000); *In re General Motors Corp. Pick-Up Truck Fuel Tank,* 55 F.3d 768, 822 (3d Cir. 1995); *see also* Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases,* 18 Geo. J. Legal Ethics 1453 (2004).

Intelligently choosing the best approach for any particular case obviously requires a district court to understand class counsel's lodestar – which of course requires meaningful disclosure both of the hours billed and of the attorneys' reasonable hourly billing rates. But Class Counsel declined to submit this most basic information, thereby precluding a fully informed exercise of discretion in

awarding attorneys' fees. The Court should require Class Counsel to submit time records and billing rates before awarding attorneys' fees.

The Court should, moreover, strictly scrutinize Class Counsel's submissions. Seventh Circuit precedent warns that "inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." *Reynolds,* 288 F.3d at 286. Evaluating the quality of Class Counsel's service, this Court should consider the fact that they have settled a multibillion dollar case not for pennies on the dollar, but for hundredths of a cent on the dollar – warranting a minimal fee award, if any at all.[11] Given the near certainty, moreover, that corporate defendants will gladly pay nuisance value settlements to avoid the risk of facing multi-billion dollar claims, this Court should flatly reject Class Counsel's requests to be compensated for bearing any substantial "risk" of non-recovery in this case. They might have faced a substantial risk of non-recovery if they litigated the case through trial, to be sure – but they avoided that risk by settlement. If anything, their fees should be adjusted downward based on the poor result achieved, and consequent absence of risk.

### D. The Incentive Awards Should be Denied

The two named plaintiffs request "incentive awards" or "service awards" of $15,000 each, because they "worked with Class Counsel to investigate the case, were kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement." DE22:15-16. Their request should be denied.

---

[11] *See Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413–14 (2d Cir. 1989) (district court may, in accounting for limited success, either eliminate specific hours or reduce the total award); *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 525 (S.D.N.Y. 2002) (imposing 60% lodestar reduction from counsel's fee request for poor results: recovery of $37,500 for each of the two plaintiffs was "conspicuously lean" when counsel initially estimated potential damages of $1.25 million, and there was no evidence that defendant changed its practices as a result of the case); *In re Initial Pub. Offering Sec. Litig.*, 671 F.Supp.2d 467, 515-516 & n.352 (S.D.N.Y. 2009) (reduction in lodestar may be appropriate where, although counsel "obtained a large gross settlement fund," the per-share recovery was only one percent of the loss and the class size and damages were less than anticipated at the commencement of the case, but concluding that prior reduction of the lodestar to under 52% sufficed to reflect the "disappointing" result.).

The Supreme Court's seminal common-fund decisions, *Greenough* and *Pettus,* prohibit incentive awards to compensate a class representative for its services rendered to the class. *See Greenough*, 105 U.S. at 537-38; *Pettus,* 113 U.S. at 122 (quoting *Greenough,* 105 U.S. at 537-38); *Gortat v. Capala Brothers, Inc.*, 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013) (following *Greenough*). Both cases hold that a litigant whose efforts create a common fund may recover expenses reasonably incurred, including its reasonable attorneys' fees, ***but not*** an incentive award for services rendered, which is something that *Greenough* condemns as "decidedly objectionable." *Greenough,* 105 U.S. at 537. "The reasons which apply to his expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses." *Greenough,* 105 U.S. at 537. "Such an allowance has neither reason nor authority for its support." *Id.* at 538. According to *Greenough,* such a payment is one "illegally made."[12]

Fundamental Rule 23 principles also bar such awards. Rule 23 precedents have, in fact, long held that "special rewards for counsel's individual clients are not permissible when the case is pursued as a class action. Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'"[13] Special payments to the class representatives thus provide a strong indication that the class has not been adequately represented, and that a proposed settlement should not be approved.[14]

---

[12] *Greenough,* 105 U.S. at 537; *accord Pettus,* 113 U.S. at 122 (quoting *Greenough,* 105 U.S. at 537-38); *see also, e.g., Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* representative claimants interested in the fund itself can receive "no compensation for personal services"); *Gortat,* 949 F.Supp.2d at 379 (following *Greenough*).

[13] *Officers for Justice v. Civil Service Commission of the City and County of San Francisco,* 688 F.2d 615, 632 (9th Cir.1982); *accord, e.g., Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Kincade v. General Tire Rubber Co.,* 635 F.2d 501, 506 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1175 (4th Cir. 1975).

[14] *See Plummer v. Chemical Bank,* 91 F.R.D. 434, 442 (S.D.N.Y. 1981) ("[w]hile there may be circumstances in which additional benefits to the named plaintiffs may be justified, such disparities must be regarded as prima facie evidence that the settlement is unfair to the class"), *aff'd* 668 F.2d 654, 660 (2d Cir. 1982).

As late as 1974 Harvard Law Professor John P. Dawson could find "no case that uses the *Greenough* doctrine to reimburse the litigants themselves for their own time, travel, or personal expenses, however necessary their efforts may have been to litigation that conferred gains on others." John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 HARV. L.REV. 1597, 1602 (1974). "Beginning around 1990," however, "awards for representative plaintiffs began to find readier acceptance," orders "approving incentive awards proliferated," and were within a decade thought "'routine'" in some courts. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. REV. 1303, 1310-11 & n.21 (2006).

The Seventh Circuit first approved of such awards in dictum in *In re Continental Illinois Sec. Litig.,* 962 F2d 566, 571-72 (7th Cir. 1992), reasoning that since "without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable." *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 571 (7th Cir. 1992). The statement was sheer dictum, since the named plaintiff, who "was deposed, which took a few hours, and bore a slight risk of being made liable for sanctions, costs, or other fees should the suit go dangerously awry," was not therefore entitled "to be compensated for his modest services." *Id.* at 572.

Subsequent Seventh Circuit decisions have affirmed incentive awards – but without even noting the tension with *Greenough* and *Pettus.* In *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998), for example, the Seventh Circuit held that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"). The rule of these decisions: "Incentive awards are justified **when necessary** to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (emphasis added).

Davis respectfully submits that Supreme Court precedent controls over contrary dictum in *Continental Illinois,* and over decisions such as *Cook* and *Synthroid,* which never directly address

the conflict with the Supreme Court's leading common-fund precedents.[15] Even assuming that such awards are available, however, the named Plaintiffs here have not made the required showing. The Seventh Circuit decisions indicate that incentive awards are appropriate only to the extent that another plaintiff could be secured to litigate the case absent the expectation of an incentive award. *See Continental Illinois,* 962 F.2d at 571-72 (affirming denial of incentive award). Named Plaintiffs' application attempts no showing of such necessity.

Even if incentive awards may sometimes be appropriate, those sought here are clearly excessive. The Sixth Circuit has warned that courts "should be most dubious of incentive payments when they make the class representatives whole . . . for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *In re Dry Max Pampers Litig.,* 724 F.3d 713, 722 (6th Cir. 2013). Why should the named Plaintiffs care about maximizing other class members' recovery, if ignoring their duty to the class will produce a swift bounty of $15,000 apiece?

The Sixth Circuit also has held that in order to ensure incentive awards are "not in fact a bounty," applicants

> must provide the district court with specific documentation – in the manner of attorney time sheets – of the time actually spent on the case by each recipient of an award. Otherwise the district court has no basis for knowing whether the awards are in fact "a disincentive for the [named] class members to care about the adequacy of relief afforded unnamed class members[.]"

*Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F. 3d 299, 311 (6th Cir. 2016) (quoting *Dry Max Pampers,* 724 F.3d at 722).

---

[15] *See, e.g., Bosse v. Oklahoma,*137 S.Ct. 1, 2, 196 L.Ed.2d 1 (2016) (reiterating the rule that it is the Supreme Court's "prerogative alone to overrule one of its precedents'") (quoting *United States v. Hatter,* 532 U.S. 557, 567 (2001) (quoting *State Oil Co. v. Khan,* 522 U.S. 3, 20 (1997))); *Hohn v. United States,* 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989) (even if a Supreme Court precedent "appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions"); *see generally,* BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT 28-33 (St. Paul: Thomson Reuters, 2016).

The named plaintiffs have failed both to demonstrate that incentive awards were necessary for this case to be prosecuted as a class action, and they have failed to document the services actually rendered – thereby falling far short of the showing required for an incentive award. *See Shane Group,* 825 F.3d at 311; *Ortiz v. Chop't Creative Salad Co.,* 89 F.Supp.3d 573, 580-83 (S.D.N.Y. 2015); *Silberblatt v. Morgan Stanley,* 524 F.Supp.2d 425, 435-36 (S.D.N.Y. 2007)

## IV.    CONCLUSION

For all the foregoing reasons, this Court should withhold approval of a Proposed Settlement that is grossly inadequate, and should deny the applications for attorneys' fees and incentive awards.

DATED:  July 24, 2017                    LAW OFFICE OF ERIC ALAN ISAACSON


                                            /s/  Eric Alan Isaacson
                                        _____
                                        ERIC ALAN ISAACSON
                                        (*pro hac vice* motion pending)

                                        LAW OFFICE OF ERIC ALAN ISAACSON
                                        ERIC ALAN ISAACSON (*pro hac vice* pending)
                                        6580 Avenida Mirola
                                        La Jolla, CA    92037-6231
                                        Telephone:  858-263-9581
                                        ericalanisaacson@icloud.com

                                        Attorney for Objector John W. Davis

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 24, 2017, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the email addresses for counsel of record including the following:

Beth E. Terrell, *Admitted Pro Hac Vice*
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
Mary B. Reiten, *Admitted Pro Hac Vice*
Email: mreiten@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
BURKE LAW OFFICE, LLC
155 North Michigan Avenue, Suite 9020
Chicago, Illinois 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

Adam R. Gonnelli, *Admitted Pro Hac Vice*
Email: gonnellia@thesultzerlawgroup.com
THE SULTZER LAW GROUP PC
280 Highway 35, Suite 304
Red Bank, New Jersey 07701
Telephone: (732) 741-4290
Facsimile: (888) 749-7747

Innessa S. Melamed, *Admitted Pro Hac Vice*
Email: imelamed@faruqilaw.com
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Julia B. Strickland
Email: jstrickland@stroock.com
Arjun P. Rao, *Admitted Pro Hac Vice*
Email: arao@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Mark B. Blocker
Email: mblocker@sidley.com
J. Simone Jones
Email: simone.jones@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Date: July 24, 2017

s/ Eric Alan Isaacson
ERIC ALAN ISAACSON

# EXHIBIT A

**Davenport v. Discover Class Action Notification**        Thursday, April 20, 2017 10:08 PM

From:   "Discover Settlement Claims Administrator" <Administrator@qgemail.com>

To:   <span style="color:red">REDACTED</span>

**2 Files**   17KB



6KB      11KB

text001       text002

Save        Save

Claim ID: 10365417301

Sumner Davenport ("Plaintiff") v. Discover Financial Services ("DFS") and Discover Home Loans, Inc. ("DHL" and together, with DFS, "Discover"),

United States District Court for the Northern District of Illinois, Case No. 1:15-CV-6052

Dear John Davis:

DHL's records indicate that you may be a member of the proposed "Settlement Class" in this action, which includes all persons to whom DHL made, from June 1, 2012 through July 31, 2015, one or more non-emergency telephone calls (a) promoting goods or services through the use of an automatic telephone dialing system or an artificial or prerecorded voice and whose contact information DHL purchased from a third party lead generator, or (b) to a cellular or residential telephone number registered on the National Do Not Call Registry and who received more than one such call within any twelve-month period and whose contact information DHL purchased from a third party lead generator. A person who does not exclude him or herself is a "Settlement Class Member."

**The purpose of this Notice is to inform the Settlement Class of the terms of the settlement and important deadlines relating to the settlement, as summarized below and described more fully on the Settlement Website: www.DavenportTCPASettlement.com. You may also call the Toll-Free Settlement Hotline, 1-844-660-2226.**

Plaintiff claims that DHL violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., by placing telemarketing calls, between June 1, 2012 and July 31, 2015, to cellular telephones, through the use of an automatic telephone dialing system or an artificial or prerecorded voice without prior express written consent and by placing more than one telemarketing call within any twelve-month period to telephone numbers on the National Do Not Call Registry. Discover denies these allegations and denies any claim of wrongdoing. The Court has not ruled on the merits of Plaintiff's claims or Discover's defenses.

### TERMS OF THE SETTLEMENT

Discover has agreed to pay $5,000,000 into a settlement fund, which will pay for the costs of notice and administration of the settlement, Settlement Class Members' claims, attorneys' fees to Class Counsel not to exceed $1,466,000 and Class Counsel's out-of-pocket expenses as approved by the Court, incentive awards of $15,000 each to Plaintiff as well as Polly Hansen, if approved by the Court, and a potential charitable contribution. Class Counsel estimate that a Settlement Class Member who submits a valid claim form ("Claim Form") may receive a cash award in the range of $25 to $50.

### DEADLINES UNDER THE SETTLEMENT

• Submit a Claim Form. In order to receive benefits under the settlement, you must submit a valid Claim Form by no later than July 24, 2017. Claim Forms may be obtained on the Settlement Website, www.DavenportTCPASettlement.com, or by calling the Toll-Free Settlement Hotline, 1-844-660-2226. Claim Forms must be submitted by mail or through the Settlement Website. Settlement Class Members may only submit one claim. More details can be found on the Settlement Website.

• Exclude Yourself. To exclude yourself from the settlement, submit a written exclusion request postmarked on or before July 24, 2017 to the Claims Administrator at Discover Settlement Claims Administrator, P.O. Box 43469, Providence, RI 02940-3469. To be valid, the written exclusion request must contain specific information that is described through the Settlement Website, www.DavenportTCPASettlement.com. If you do not submit a valid and timely exclusion request, you will be bound by the terms of the settlement and you will give up your right to sue regarding telemarketing calls placed by DHL to you between June 1, 2012 and July 31, 2015.

- <u>Object</u>. To object to or comment on the settlement or Class Counsel's Attorneys' Fee and Cost Request ("Fee Request"), you must file an objection with the Court by July 24, 2017. To be valid, objections must contain specific information that is described through the Settlement Website, www.DavenportTCPASettlement.com. Class Counsel is requesting attorneys' fees of $1,466,000 as well as out-of-pocket expenses out of the settlement fund. Class Counsel's Fee Request and documents in support of it will be available for viewing on the Settlement Website by June 20, 2017. Anyone who objects to the settlement may ask to appear at the Final Approval Hearing, described below. If your objection is valid and submitted on time, the Court will consider it whether or not you appear at the hearing. Even if you submit a valid and timely objection, to benefit from this settlement you must complete a Claim Form.

- <u>Do Nothing</u>. If you do nothing, you will not receive any monetary award; and you will lose the right to sue regarding telemarketing calls placed by DHL to you.

- <u>Final Approval Hearing</u>. The Final Approval Hearing will take place on September 14, 2017 at 9:00 a.m. in Courtroom 2319 – 23rd Floor at the U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Chicago, Illinois 60604.

Complete details about your rights and options are available on the Settlement Website, www.DavenportTCPASettlement.com. If you have further questions, you can call the Toll-Free Settlement Hotline, 1-844-660-2226. Please do not call the Court, Discover or Discover's Counsel.

The United States District Court for the Northern District of Illinois has ordered this email notice to be sent. If you wish to UNSUBSCRIBE from future email messages from the settlement administrator with regard to this Settlement, please click on this link.

EXHIBIT B

## Davenport v. Discover Financial Services, et al.

## Claim Form Receipt

> **Thank You.** Your Claim Form has been submitted. Please print this page as your receipt.

Your Claim Number is **10365417301**. Please retain this number for your records.

**Print**

| | |
|---|---|
| Case Code: | **DDV** |
| Date: | **April 25, 2017** |

### CLAIMANT INFORMATION

**JOHN DAVIS**
**LAW OFFICE OF JOHN W. DAVIS**
**501 W. BROADWAY, STE. 800**
**SAN DIEGO, CA 92101**

| | |
|---|---|
| Contact phone number: | **(619) 400-4870** |
| Email address: | REDACTED |
| Telephone number(s) where you received calls: | REDACTED |
| Certification | **I declare, under penalty of perjury under the laws of the United States, that, on or after June 1, 2012 through July 31, 2015, I received one or more telemarketing calls from Discover Home Loans, Inc. at the telephone number(s) listed above.** |

Please print this page and retain it for your records.

For more information about the Settlement and the claims filing process, please visit the Home Page or the Frequently Asked Questions.



www.kccllc.com

Home     File a Claim     File an Opt Out     Class Notice     Court Documents     Frequently Asked Questions

**Kurtzman Carson Consultants**     Terms of Use     Privacy Policy