IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUMNER DAVENPORT, individually and
on behalf of all others similarly situated,

                Plaintiff,

      v.

DISCOVER FINANCIAL SERVICES and
DISCOVER HOME LOANS, INC.,

              Defendants.

NO. 1:15-cv-06052

**DEMAND FOR JURY**

Honorable Virginia M. Kendall

Magistrate Judge Geraldine S. Brown

**<u>PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................................................................... 1

II. AUTHORITY AND ARGUMENT ...................................................................... 1

    A.  The settlement is the result of informed, arm's-length negotiations ................... 2

    B.  Class members received the best notice practicable ............................................ 3

    C.  The settlement satisfies the criteria for settlement approval ............................... 5

        1.  The strength of Plaintiff's case compared to the amount of the settlement ..................................................................................................... 6

        2.  Continued litigation would be complex, lengthy, and expensive ........... 10

        3.  The minimal opposition to the settlement and counsel's support favor approval ......................................................................................... 11

        4.  The extent of discovery completed and the stage of the proceedings .............................................................................................. 12

        5.  The settlement is reasonable in light of the requested attorneys' fees ......................................................................................................... 12

    D.  The objection should be overruled ..................................................................... 15

    E.  The service awards to the Class Representatives are fair and reasonable .......... 15

III. CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*,
  No. 09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ............................................... 9

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017)......................................... 13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).......................................................................................................... 13

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ........................................................................................ 15

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
  No. 11-cv04462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015)................................. 13, 15

*Estrada v. iYogi, Inc.*,
  No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)................... 10

*Franklin v. Wells Fargo Bank, N.A.*,
  Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) .......... 10

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016)...................................................................................... 10

*Gene and Gene LLC v. BioPay LLC*,
  541 F.3d 318 (5th Cir. 2008) ........................................................................................... 8

*Heekin v. Anthem, Inc.*,
  05-cv-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)....................... 16

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)........................................................................................ 9

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................................... 10, 13

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................................ 11

*In re Sw. Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ........................... 11, 15, 16

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ................................................................. 13, 15

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ....................................................... 1, 5, 11, 12

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ............................................................ 10, 14

*Manouchehri v. Styles for Less, Inc.*,
    Case No. 14cv2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016) ..................... 10

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*,
    834 F.2d 677 (7th Cir. 1987) .................................................................. 9

*Martin v. Reid*,
    818 F.3d 302 (7th Cir. 2016) ................................................................. 5

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 6, 7

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ............................................................... 6, 14

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ........................................................... 6, 12, 14

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................... 10, 11

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ................................................................ 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ....................................................... 5, 6, 11, 12

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*,
    309 F.3d 978 (7th Cir. 2009) ................................................................. 2

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011) .............................................................. 8

*Wright v. Nationstar Mortg. LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) .................................. 9, 13

## OTHER AUTHORITIES

*Manual for Complex Litigation* (Fourth) § 21.61 (updated 2017) ................................................ 2

William B. Rubenstein, *Newberg on Class Actions* § 13:45 (5th ed. 2016) ................................ 2

## I. INTRODUCTION

Plaintiff Sumner Davenport and Class Counsel achieved substantial relief for Settlement Class Members in the form of a settlement that requires Defendants to pay $5,000,000 into a non-reversionary settlement fund. The settlement is the product of disputed litigation, probative discovery, a thorough evaluation of Plaintiff's claims and the risks of continued litigation, and contested settlement negotiations. Notice of the settlement has been sent and the claims, exclusion, and objection deadlines have passed. In total, 64,707 claims have been timely submitted for a cash payment. If the settlement were to be approved as requested, and all of the submitted claims were accepted, each claimant would receive about $44. By contrast, just 65 exclusion requests were submitted, and <u>one</u> person – a non-class member known to be a "professional objector" lawyer – has objected. This positive reaction is evidence that the settlement is fair, reasonable, and adequate.

For the reasons set forth in this memorandum and in the papers previously submitted in support of approval, Plaintiff respectfully requests that the Court grant final approval to the settlement by: (1) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) approving payment to the claims administrator estimated to be $675,000; (4) approving Class Counsel's requested attorneys' fees of $1,417,350; (5) approving an award of $15,000 to Plaintiff Davenport and Polly Hansen for their service as Class Representatives; and (6) overruling the single invalid and unmeritorious objection.

## II. AUTHORITY AND ARGUMENT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). Under Rule 23, a court's inquiry is whether the settlement is "lawful,

fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61 (updated 2017).

**A.      The settlement is the result of informed, arm's-length negotiations.**

A proposed class settlement is presumptively fair when sufficient discovery has been provided and "the settlement is the product of arms-length negotiation, untainted by collusion." William B. Rubenstein, *Newberg on Class Actions* § 13:45 (5th ed. 2016). The settlement here satisfies this test.

As the Court recognized in its preliminary approval order, the settlement "resulted from arm's-length negotiations." *See* Dkt. 41. The parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including actions involving alleged violations of the TCPA. *See* Dkt. 78-2 ¶¶ 9–12, 78-3 ¶ 6, 78-4 ¶ 2, Ex. A. To reach this settlement, the parties engaged in mediation with the Honorable Morton Denlow (Ret.) of JAMS. Dkt. 78-2 ¶ 16. The full-day mediation and subsequent additional negotiations culminated in a Settlement Agreement that provides substantial benefits to the Settlement Class, including a non-reversionary payment by Discover of $5,000,000 into a Settlement Fund that Plaintiff proposes be used to pay (1) Settlement Class Member claims in the amount of $2,877,650; (2) settlement administration expenses of $675,000; (3) a court-approved incentive award to Plaintiff Davenport and former named Plaintiff Polly Hansen in the amount of $15,000 each; and (4) court-approved attorneys' fees of $1,417,350 (33% of the Settlement Fund after deducting administration expenses and service awards).

The settlement is the result of a thorough investigation by the parties. Discover admitted that it called Plaintiff, but Discover maintains that Plaintiff and class members consented to

receive calls by filling out online forms requesting information about home loans. Discover asserts Plaintiff and class members provided their telephone numbers on the online forms. To investigate this defense, Plaintiff sought information about Discover's relationship with its lead generators, including contracts and purchase information. Dkt. No. 78-2 ¶¶ 13–15. Plaintiff also served subpoenas on, and received information from, lead generators such as LowerMyBills.com and Lending Tree. *Id.* ¶ 14. After a settlement in principle was reached, Plaintiff continued document discovery and took a deposition to confirm the size of the class. *Id.* Ms. Hansen responded to written discovery from Discover. *Id.* ¶ 13.

The parties reached agreement with the able assistance of Judge Morton Denlow (Ret.) of JAMS in Chicago. Judge Denlow requires parties mediating class actions to participate in pre-mediation calls and to complete a mediation "checklist" that sets forth each party's respective position on the merits of the claims at issue as well as estimated damages. Dkt. 78-2 ¶ 16. At mediation, Judge Denlow held a joint session during which counsel discussed their views on the law and the facts and potential relief for the proposed Settlement Class. *Id.* At all times the settlement discussions were arms-length and adversarial in nature. *Id.* In light of Class Counsel's extensive discovery efforts and their work negotiating fair relief for the Settlement Class, the settlement is presumed to be fair.

**B.     Class members received the best notice practicable.**

This Court already preliminarily determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. Dkt. 82 ¶ 4. KCC fully executed the notice program. *See generally* Declaration of Eric Robin Re: Notice Procedures ("Robin Decl.").

On April 20, 2017, KCC sent an Email Notice to 1,678,605 persons on the "Class Member List" that Discover provided to KCC for whom an email was available. Robin Decl. ¶ 5. KCC also mailed the Postcard Notice to 169,436 persons for whom no email address was available and to 296,315 people whose Email Notice was undeliverable. *Id.* ¶¶ 4, 6. The Email and Postcard Notices summarized the settlement, informed Settlement Class members of key deadlines, including the deadline to submit claims, exclusion requests, or objections, and referred Settlement Class members to the Settlement Website. *Id.*, Exs. A, B.

KCC updated addresses using the United States Postal Service National Change of Address database before mailing. Robin Decl. ¶ 3. If a Postcard Notice was returned with a forwarding address, KCC mailed the postcard to the updated address. *Id.* ¶ 7. KCC conducted address searches for postcards returned undeliverable and promptly re-mailed the postcards to the updated addresses. *Id.*

KCC estimates that 97.5% of Class Member List received either a Postcard or Email Notice. Robin Decl. ¶ 8. In all, 1,833,402 of the 1,881,320 persons on the Class Member List provided by Discover were sent a Postcard or Email Notice that has not been returned to KCC. *Id.* To supplement this successful direct notice campaign, KCC published a Summary Notice in the May 1, 2017 issue of People magazine, which was on sale on April 21, 2017. *Id.* ¶ 9. The Summary Notice appeared opposite the regular Puzzler (crossword) section of the magazine. *Id.*

KCC also established a toll-free number where Settlement Class members were able to learn more about the Settlement, and a Settlement Website where Settlement Class Members were able to file a claim, receive answers to frequently asked questions, and download case documents such as the Class Notice, the Complaint, Defendants' Answer, the Settlement Agreement, Preliminary Approval Order, and Class Counsel's fee petition. Robin Decl. ¶ 11. By

August 18, 2017, the toll-free number had received 4,835 calls, and the website had received 114,865 visitors. *Id.* ¶¶ 10, 11.

The postmark deadline for submitting a claim, and for requesting exclusion or objecting to the settlement was July 24, 2017. Robin Decl. ¶ 12. KCC received 64,707 claim forms. *Id.* ¶ 14. In contrast, KCC received just one objection. *Id.* ¶ 13. Only 65 Settlement Class Members requested to opt out. *Id.* ¶ 12. The notice program has been successful. Approximately 3.4% of the Settlement Class List submitted potentially valid claims, which is in line with claims rates in other TCPA settlements. *See, e.g., Global Educ. Servs., Inc. v. Intuit, Inc.*, No. C09-944 RSL, Dkt. No. 91 (W.D. Wash. 2012) (approving settlement with a .5% claims rate); *McClintic v. Lithia Motors, Inc.*, No. C11859 RAJ, Dkt. No. 50 (W.D. Wash. Oct. 23, 2012) (approving settlement with a 4.16% claims rate); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-00198-JLR (W.D. Wash. 2012) (approving settlement with a 2.2% claims rate). In sum, the notice program implemented by KCC has provided due and adequate notice of these proceedings and satisfies the requirements of due process.

**C.     The settlement satisfies the criteria for settlement approval.**

In evaluating a settlement, a district court must consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby*, 75 F.3d at 1999); *see also Martin v. Reid*, 818 F.3d 302, 306-307 (7th Cir. 2016) (same). "The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of

plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)).

The court also "must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). The court evaluating the settlement is "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014).

1. <u>The strength of Plaintiff's case compared to the amount of the settlement.</u>

The settlement reached in this case requires Discover to pay $5,000,000 into a Settlement Fund, out of which at least $2,877,650 will be distributed to the Settlement Class Members who have filed timely valid claims. If all of the claims are validated, Settlement Class Members who filed a timely claim will receive approximately $44.[1] The Settlement Fund is non-reversionary. No amount will return to Discover.

The settlement follows hard-fought litigation and negotiations. Plaintiff was well informed of the strengths and weaknesses of her case by the time the parties negotiated this settlement, having pursued discovery from Discover and several third parties. The significant risk presented by continued litigation persuaded her that this settlement is in the best interest of the Settlement Class Members. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D.

---

[1] $2,877,650/64,707 claims = $44.47. If claims are disqualified after the deficiency process undertaken by the claims administrator (see Robin Decl. ¶ 16), the payments to claimants who received calls from Discover will increase.

523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" (citation omitted)).

First, Plaintiff faced the very real prospect of losing on the merits on summary judgment or at trial. Discover insists that it did not place telemarketing calls to potential leads, including Plaintiff, unless it had prior express written consent to do so. Discover contends that Plaintiff, Ms. Hansen, and other class members provided this consent by visiting websites and entering their telephone numbers on online forms in order to receive quotes for rates on home loan refinancing. Plaintiff alleges that entering a telephone number on the online forms does not constitute proper consent under the TCPA because the disclosures on the lead generators' websites fail to satisfy the disclosure requirements set forth in the TCPA or 47 C.F.R. § 64.1200(f)(8)(i). But Discover maintains that the lead generators' comprehensive disclosures complied with the TCPA's disclosure requirements. Plaintiff is not aware of any federal court having ruled on whether the language used in the lead generators' disclosures satisfies the TCPA.

Discover also contends that its calls are not subject to the TCPA because they were made in response to inquiries submitted by class members. Discover's position is that direct responses to consumer inquiries do not constitute "telemarketing" as defined by the TCPA. If the Court or jury agreed with Discover on either of these merits issues, Plaintiff and Settlement Class Members would recover nothing.

Second, Plaintiff faced challenges identifying class members, creating a risk that her motion for class certification would not succeed. Plaintiff alleges that she never entered her

telephone number on any home lending website like lowermybills.com and Lending Tree, but she still received calls. Discover's records show that Plaintiff's number was in fact associated with another person. Plaintiff believes it is highly likely that Discover may have mistakenly called other class members as well. But identifying those class members would involve a complicated investigation into whether a technological "glitch" prompted the erroneous calls or whether Discover's vendors fraudulently entered information onto the forms and then sold the information to Discover as if it had been provided by a legitimate lead. This discovery, which almost certainly would involve mountains of electronic data, would be time consuming and expensive. If Plaintiff did not succeed in uncovering evidence of a glitch or fraud, the Court may have concluded that each class member would have to individually prove that he or she is a class member and did not consent, a potential barrier to class certification. *See, e.g., Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) ("[T]he determinative question of whether consent can be established via class-wide proof must, given the particular facts of this case, be answered in the negative. [Plaintiff] has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [defendant] may be liable under the TCPA."); *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 238 (S.D. Ill. 2011) (declining to certify a class in which some people voluntarily gave their telephone numbers to the casino knowing they would be called with special offers and some who were mistakenly called because their telephone numbers were previously assigned to the casino's customers).

Third, Plaintiff faced challenges even if she prevailed at trial. This case involves millions of class members and likely tens of millions of calls subjecting Discover to potentially extensive statutory damages. Some courts view awards of aggregate, statutory damages with skepticism and either refuse to certify a class or reduce such awards on due process grounds. *See, e.g.,*

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Even if the Court permitted a large statutory damages award, Plaintiff could have had difficulty collecting any judgment since Discover faced exposure of between $940,660,000 and over $2.8 billion, assuming class members received only one call (1,881,320 people on the Class Member List x $500 = $940,660,000; 1,881,320 class members x $1,500 = $2,821,980,000).

The settlement allows Settlement Class Members to avoid all of these risks and obstacles to recovery and receive substantial benefits, and in a timely fashion. While the estimated cash of $44 does not constitute the full measure of statutory damages potentially available to the Settlement Class, settlements very rarely do. Settlement is a compromise, and courts need not reject a settlement "solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010); *see also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 682-83 (7th Cir. 1987) (finding a settlement that constituted only a small fraction of the potential $750 million to $1.5 billion the plaintiffs could have recovered at trial "seems generous—and certainly adequate, as the district court found" when plaintiffs faced significant challenges in proving their claims).

The settlement compares favorably to other TCPA settlements in the Seventh Circuit and elsewhere. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *8–9 (N.D. Ill. Aug. 29, 2016) (approving TCPA settlement where each claimant received $45);

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving settlement where recovery per claimant was $52.50); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received approximately $71.16); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive and estimated $40).

Given the significant risks Plaintiff faces in proving her claims on a class-wide basis, the $44.47 cash award, which is comparable to other TCPA settlements, is an excellent result for the Settlement Class.

2.     Continued litigation would be complex, lengthy, and expensive.

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). At the time of settlement, Plaintiff had not yet briefed her motion for class certification. In addition, Discover very likely would have filed one or more motions for summary judgment. Assuming Plaintiff successfully certified a class and defeated any motions for summary judgment, there is a substantial risk of losing inherent in any jury trial. Moreover, any judgment obtained in favor of Plaintiff and the proposed class could be further delayed by the appeal process. This factor favors settlement approval.

3.     <u>The minimal opposition to the settlement and counsel's support favor approval.</u>

The amount of opposition to a settlement among affected parties is another factor district courts consider in deciding whether to approve a class action settlement. *Synfuel*, 463 F.3d at 653; *see also Isby*, 75 F.3d at 1199. Courts often infer that a settlement is fair, adequate, and reasonable when few class members object to it. *See, e.g., Isby*, 75 F.3d at 1200 (affirming final approval of settlement where 13% of the class submitted written objections); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011) (approving settlement where 342 class members excluded themselves and 15 class members objected); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections is strong circumstantial evidence in favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir. 2001).

Just one person[2] objected to the Settlement and 65 requested to opt out. The fact that more than 99% of class members have neither objected nor opted out is strong evidence in favor of the settlement. By contrast, 64,707 potentially valid claims have been submitted. Robin Decl. ¶ 14.

Class Counsel endorse this settlement and believe it is a great result for the class. *See* Dkt. 78-2 ¶ 17; Dkt. 78-3 ¶ 12; Dkt. 78-4 ¶ 4.  Class Counsel's support and the positive reaction

---

[2]  The sole objector, professional objection lawyer John W. Davis, does not appear to have received any call from Discover, and therefore is not a class member.

of Class Members are evidence that the settlement is fair, reasonable, and adequate. This factor favors approval.

4.      The extent of discovery completed and the stage of the proceedings.

Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable. *See Synfuel*, 463 F.3d at 653; *see also Isby*, 75 F.3d at 1200 (noting "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough'").

Here, Class Counsel have thoroughly analyzed the factual and legal issues involved. Plaintiff propounded written discovery, reviewed Discover's policies and practices, subpoenaed and reviewed third-party documents, and performed confirmatory discovery regarding the size and contours of the Settlement Class. As a result of their extensive discovery efforts, by the time the parties reached a settlement, they understood the strength and weaknesses of their claims and defenses and the extent of class wide damages. Counsel's thorough legal and factual analyses informed the settlement. This factor weighs in favor of settlement.

5.      The settlement is reasonable in light of the requested attorneys' fees.

When determining whether a proposed settlement is reasonable, the Seventh Circuit has instructed district courts to "assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman*, 768 F.3d at 629. Here, Class Counsel request one-third of the net Settlement Fund, which reasonably reflects the market rate for fees in similar cases, especially in light of the substantial risks Class Counsel shouldered in bringing this case.

As Class Counsel describe in their fee petition (Dkt. 89), federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

Courts in this district have routinely concluded that the percentage-of-the-fund approach is superior to the lodestar approach for determining the market price for legal services in TCPA class action settlements. *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14 C 1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv04462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (same). The percentage-of-the-fund approach is particularly appropriate in consumer class actions because the custom is for counsel and plaintiff to "negotiate[] a fee arrangement based on a percentage of the recovery.*" In re Capital One, Tel. Consumer Prot. Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) ("*Capital One*") (applying percentage-of-the-fund method in TCPA class action). "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis," which is something that

consumer class members "likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (using percentage-of-the-fund method in TCPA class action).

"The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572. Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)). Although there is no hard-and-fast rule, in consumer class actions in the Seventh Circuit, attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631.

In their fee petition, Class Counsel estimated that one-third of the net Settlement Fund would be $1,458,000. However, the cost of administration has been higher than KCC originally estimated. *See* Robin Decl. ¶ 16 (explaining that although KCC originally estimated administration to be $550,000, the expenses are now expected to be $675,000 due to the need to research the high number of potentially deficient claims). Class Counsel continue to seek one-third of the net Settlement Fund, which is now is now $1,417,350. If Class Counsel's requested fees are approved, the Settlement Class Members would receive $2,877,650 (5,000,000 - $1,417,350 - $30,000 - $675,000). Thus, the "fee plus what the class members would receive" totals $4,295,000 ($1,417,350 + $2,877,650). Based on the ratio set forth in *Pearson* and *Redman*—fees to fees plus the value to class members—Class Counsel request 33% of the total settlement value to the class, which is within the acceptable range of fee awards in the Seventh Circuit. Thus, the settlement is reasonable in light of this factor.

**D.    The objection should be overruled.**

Only one person has objected to the Settlement, John W. Davis. Mr. Davis lacks standing because he did not receive any calls in this case. *See* Declaration of Karen Tran ¶¶ 4–8. Plaintiffs have submitted a separate brief explaining why Mr. Davis's objection should be rejected or overruled.

**E.    The service awards to the Class Representatives are fair and reasonable.**

Service awards compensating named plaintiffs for work done on behalf of the class are also routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

The requested service awards of $15,000 for named Plaintiff Sumner Davenport and former named Plaintiff Polly Hansen are reasonable. Ms. Davenport and Ms. Hansen worked with Class Counsel to investigate the case, were kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. Ms. Hansen was the original named plaintiff in this action but had to withdraw as a plaintiff due to serious illness. Dkt. No. 50. Before her illness made it impossible to continue representing the Class, Ms. Hansen had spent significant time working with Class counsel to respond to discovery requests and support Class counsel's investigation of her claims. *Id.* ¶ 2. Moreover, the amount requested is consistent with awards approved by courts in this District and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Craftwood Lumber Co.*, 2015 WL 1399367 (awarding $25,000 service award to plaintiff in TCPA case); *In re Sw. Airlines Voucher*

*Litig.*, No. 110CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000

service awards to both named plaintiffs); *Heekin v. Anthem, Inc.*, 05-cv-01908-TWP-TAB, 2012

WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class

plaintiff over objection).

### III.  CONCLUSION

The settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiff

respectfully requests that the Court overrule the objection and grant final approval to the

settlement

RESPECTFULLY SUBMITTED AND DATED this 31st day of August, 2017.

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
     Beth E. Terrell, *Admitted Pro Hac Vice*
     Email:  bterrell@terrellmarshall.com
     Jennifer Rust Murray, *Admitted Pro Hac Vice*
     Email:  jmurray@terrellmarshall.com
     Mary B. Reiten, *Admitted Pro Hac Vice*
     Email:  mreiten@terrellmarshall.com
     936 North 34th Street, Suite 300
     Seattle, Washington  98103-8869
     Telephone:  (206) 816-6603
     Facsimile:  (206) 319-5450


     Alexander H. Burke
     Email:  aburke@burkelawllc.com
     Daniel J. Marovitch
     Email:  dmarovitch@burkelawllc.com
     BURKE LAW OFFICE, LLC
     155 North Michigan Avenue, Suite 9020
     Chicago, Illinois 60601
     Telephone:  (312) 729-5288
     Facsimile:  (312) 729-5289

Adam R. Gonnelli, *Admitted Pro Hac Vice*
Email:  gonnellia@thesultzerlawgroup.com
THE SULTZER LAW GROUP PC
280 Highway 35, Suite 304
Red Bank, New Jersey 07701
Telephone:  (732) 741-4290
Facsimile:  (888) 749-7747

Innessa Melamed Huot, *Admitted Pro Hac Vice*
Email:  ihuot@faruqilaw.com
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331

*Attorneys for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

I, Jennifer Rust Murray, hereby certify that on August 31, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Julia B. Strickland
Email: jstrickland@stroock.com
Arjun P. Rao, *Admitted Pro Hac Vice*
Email: arao@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Mark B. Blocker
Email: mblocker@sidley.com
J. Simone Jones
Email: simone.jones@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

Neil P. Gantz
Email: neilgantz@yahoo.com
LAW OFFICES OF NEIL P. GANTZ
105 West Madison Street, Suite 901
Chicago, Illinois 60602
Telephone: (312) 726-4880

Eric A. Isaacson, *Admitted Pro Hac Vice*
Email: ericalanisaacson@icloud.com
LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, California 92037
Telephone: (858) 263-9581

*Attorneys for Objector John W. Davis*

- 18 -

DATED this 31st day of August, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Jennifer Rust Murray, *Admitted Pro Hac Vice*
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

*Attorneys for Plaintiff*